GARVIN COUNTY and the State Insurance Fund, Petitioners,

v.

R. Marvin PIERCE, Administrator of the Estate of Silas B. Collins, deceased, and the State Industrial Court of the State of Oklahoma, Respondents.

No. 41249.

Supreme Court of Oklahoma.

Aug. 3, 1965.

Rehearing Denied Oct. 5, 1965.

Sam Hill, Guy Secor, Moraul Bosonetto, Oklahoma City, for petitioners.

C. H. Bowie, Pauls Valley, Charles R. Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., Oklahoma City, for respondents.

LAVENDER, Justice.

This is an original proceeding by Garvin County, employer, and its insurance carrier, State Insurance Fund, for review of an order of the State Industrial Court awarding compensation under the death benefit provisions of the Workmen's Compensation Act to R. Marvin Pierce, administrator of the estate of Silas B. Collins, deceased, for and on behalf of Lottie Collins, his widow.

Employer and its carrier will be referred to as petitioners, the administrator as claimant and Collins as deceased.

The petitioners advance but one proposition for reversal of the lower court's order. They contend "there is a complete absence of testimony that the death of the deceased arose out of or in the course of his employment and for such reason the State Industrial Court was without jurisdiction to make an award."

It was stipulated by the parties that the deceased was an employee of Garvin County on June 10, 1964, and that on said date he was killed in an automobile accident at an intersection of highways in Stratford, Oklahoma.

Tom Abney testified he was the sheriff of Garvin County and had been such since 1957; that deceased had been undersheriff from 1957 until the day of his death; that deceased's regular hours were from 8:00 o'clock A.M. to 5:00 o'clock P.M., but that he was on call twenty-four hours each day; that much of deceased's duties, such as serving civil and criminal process, were done before and after regular hours, and that deceased was the one who always went by the post office in Pauls Valley before 8:00 o'clock A.M. each day and got the mail for the office; that deceased was the only one who had a key for the mail box; that deceased lived at Stratford, which is seventeen miles east and four miles north of Pauls Valley; that deceased made investigations in Stratford. The witness testified further that deceased was authorized to buy stamps for the office, and on the day following the death of deceased the funeral home which prepared deceased's body for burial de-

livered to witness some stamps. On cross-examination, the witness testified that he did not require that deceased buy the stamps in Stratford, but that the "lady at the post office" in Stratford told him that the deceased bought the stamps there and how many rolls of stamps he bought; that deceased drove his own car to and from work, and that the county did not pay his expenses for that but did pay deceased when he used his car to serve legal papers.

Clark Caves testified he was a deputy sheriff for Garvin County; that deceased was in charge of all operations when the sheriff was absent from duty, and that deceased brought the mail to the office every morning.

Granville Lobaugh testified he was the jailer for Garvin County; that he too lived at Stratford, and that he and deceased "swapped rides," he driving his car one day and deceased driving his the next; that each morning deceased went by the post office in Pauls Valley on his way from home to the sheriff's office and picked up the mail; that it was his and deceased's duty to police the east part of Garvin County where Stratford was located.

John Lee Ballard testified he was the father-in-law of deceased; that at the time of deceased's death he went to the scene of the accident and removed "papers" from the automobile of deceased and gave them to his daughter, Lottie Collins, who was the wife of deceased; that he did not know the nature of the papers.

John R. Pratt, Jr. testified he was employed by the funeral home that removed deceased's body from the scene of the accident, and that he took five rolls of stamps from the deceased's pockets, along with other personal effects, and turned the stamps over to Sheriff Abney.

Lottie Collins testified she was the surviving widow of deceased; that on June 9, 1964, the day preceding his death, deceased brought home a letter written to the sheriff's office by a person in California who advised the sheriff that he "might be interested" in a certain man and his wife of alleged un-desirable character who had left California and bought a place in Stratford. This letter was dated June 4 and mailed from Orcutt, California on June 5th, 1964. The letter was introduced in evidence and in part stated that this man and his wife had been selling marijuana cigarettes; that the man had served two terms in the Huntsville, Texas prison; that the wife had been picked up for petit larceny charges eighteen or twenty times; that they had left California leaving over $1,500.00 in open accounts and had taken with them several articles without permission of the owners; that these parties had bought a place next door to the funeral home in Stratford. This witness further testified that the next morning, on the date of his death, deceased left home with witness at approximately 7:00 o'clock A.M. and went to the place of the people named in said letter to investigate them; that their car was not there, so deceased drove witness down town in Stratford where he took her to her job at a drug store; that at the drug store she delivered to deceased stamps she had bought at an earlier date at the post office in Stratford; that the stamps had been bought at the direction of deceased with a check on Garvin County given her by deceased for that purpose; that deceased left the drug store at about 7:25 o'clock A.M., headed for Pauls Valley and was killed approximately five minutes later. Witness testified that the papers given her by her father were warrants of arrest for various and sundry individuals, and said warrants were made a part of the record. On cross-examination, witness testified that deceased put the stamps in his pocket, and that the above referred to letter was in deceased's shirt pocket when he left the drug store, and it was also a part of the papers delivered to her by her father; that deceased made investigations in the east end of the county both before and after regular working hours.

All of the above witnesses testified in behalf of the claimant. Petitioners offered no evidence.

Petitioners intensely urge that an injury suffered by an employee while going to and from the premises where he is employed is not one arising out of and in the course of his employment.

■ While the general rule is that an injury suffered by an employee while on his way to or from his regular work does not arise out of and in the course of his employment, the rule does not apply where the employee sustains an accidental injury while going to or returning from his place of work to perform a special task outside his regular hours at the request of his employer and for the employer's benefit. Dawson v. Oklahoma City Casket Company, Okl., 322 P.2d 642; Anderson Const. Co. v. Franklin, Okl., 315 P.2d 785; Thurston Chemical Co. v. Casteel, Okl., 285 P.2d 403; R. J. Allison, Inc. v. Boling, 192 Okl. 213, 134 P.2d 980.

The evidence in the instant case is undisputed that deceased was required to perform extra work outside of his regular hours, such as to serve legal process, police the east end of the county, purchase stamps, make investigations and go to the post office in Pauls Valley each morning for the mail. The evidence is undisputed that on the day of his death and just before his death he made a trip to the place of persons of alleged undesirable reputations for the purpose of investigation, and that this was done at the direction of the sheriff, deceased's supervisor, as was shown by the above referred to letter. This was a special mission to perform a special task at the request of his employer and for his employer's benefit outside of his regular hours.

It can also be safely assumed from the evidence that deceased, at the time of his accident, was on his way to the post office in Pauls Valley to get the mail for the sheriff's office. This, too, was a special task at the request of his employer and for his employer's benefit and outside of his regular hours.

The evidence herein clearly brings this case within the exception to the general rule as above set forth and tends to establish that deceased's death arose out of and in the course of his employment.

■■ The question as to whether an injury sustained by an employee arose out of and in the course of his employment is one of fact to be determined by the State Industrial Court under the circumstances of each particular case, and where there is competent evidence reasonably tending to support the finding it will not be disturbed on review. Graham-Michaelis Drilling Co. v. Atkins, Okl., 397 P.2d 658; Townley's Dairy v. Gibbons, Okl., 395 P.2d 947; Long v. Honeycutt, Okl., 393 P.2d 866; Terry Motor Co. v. Mixon, Okl., 361 P.2d 180; Garr v. Collins, 208 Okl. 113, 253 P.2d 838.

■ We hold there is ample testimony to reasonably support the lower court's finding that deceased's death arose out of and in the course of his employment with Garvin County.

The award is sustained.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BERRY and HODGES, JJ., concur.

IRWIN, J., concurs in result.