**TOWN OF DAVENPORT and the State Insurance Fund, Petitioners,**

v.

**Norma Jean RICHARDSON and the State Industrial Court of the State of Oklahoma, Respondents.**

**In the Matter of the Death of Don Richardson.**

**No. 42604.**

Supreme Court of Oklahoma.

Dec. 3, 1968.

Sam Hill, Moraul Bosonetto, Oklahoma City, for petitioners.

James & Butts, Stroud, G. T. Blankenship, Atty. Gen., for respondents.

HODGES, Justice.

There is involved here for review an order of the State Industrial Court, sitting en banc, affirming an award entered by the trial judge allowing the respondent, Norma Jean Richardson, claimant below, death benefits under the provisions of the Oklahoma Workmen's Compensation Act, for the use and benefit of herself as surviving widow and as natural guardian of the surviving children of Don Richardson. Parties will be referred to as they appeared before the State Industrial Court. The deceased Richardson will be referred to as "deceased".

Summarized, the evidence submitted at the trial is as follows:

Deceased, a policeman for the Town of Davenport, sustained a fatal gunshot wound, when one of his pistols was discharged at his home on January 24, 1967. He died within a few hours after the shot.

Deceased was employed as the only policeman for the Town of Davenport on December 1, 1964. One of the written expectations of his employment as outlined by the minutes of the Town Council was that he be "on call 24 hours a day"; others were that he "must have a telephone at all times", and "must live within the City limits." He was furnished with a police car equipped with radio telephone. Later he furnished his own car and was paid by the Town of Davenport for its use as a police car. Deceased continued working as a policeman until his death on January 24, 1967. The Town Clerk distributed the deceased's home telephone number to merchants and others who came in to obtain the telephone number of the police.

In the discharge of his police duties, deceased received telephone calls at his home. If he was not at home when the call was received his wife attempted to locate him. He also received calls over the car radio. He was active in his police duties at any hour during the day or night. The mayor and a City Councilman of the Town of Davenport testified that the deceased was in service twenty-four hours a day. He customarily wore jeans and a shirt in his duties as a police officer.

In addition to his police duties deceased spent a portion of his time working as a car salesman. He also assisted his father in the operation of a garage and employed a mechanic to run it. He made frequent

visits to the garage. The mechanic sometimes called the deceased at his home in the morning to wake him.

The deceased furnished his own firearms consisting of two pistols and a shot gun. He was permitted to carry these guns by his employer. He wore the pistols in holsters or at least one of them constantly when away from home. Upon returning to his home he would remove the pistols from the holsters and lay them on the floor or furniture near his bed.

On the evening of January 23, 1967, the day before the accident, deceased ate the evening meal with his parents. He returned home about 10 o'clock P.M. Two old friends came by the house. The car they were driving was about out of gasoline. Deceased drove them to Chandler in his car where a supply of gasoline was secured and they returned to deceased's home about 5 o'clock A.M. on January 24, 1967. The gasoline was placed in the friend's car and they left. While on this trip deceased did some street patrolling and went to Stroud to talk to a policeman. One of the friends testified that he was to see the deceased on police business during the morning of the 24th of January, 1967. Sometime during the evening deceased drove by his garage and told the mechanic to call him the next morning.

After entering the house the deceased visited with his wife and then retired to bed. She testified that one of the guns of the deceased was on the floor beside his bed and the other was lying on the dresser. Both were in their holsters.

At about 8:30 A.M. on January 24, the mechanic at the garage called on the telephone and talked to the wife of the deceased. She called the deceased to wake him. She heard the deceased coming downstairs. She next heard a noise that sounded like a firecracker. She entered the living room and found the deceased lying on the floor. Both pistols were lying on a chair in their holsters. One was smoking. The deceased said, "I'm hit". He died in the hospital a few hours later. Deceased had in his shirt pocket a commitment issued by the municipal judge of the Town of Davenport on January 10, 1967.

The trial judge held:

"That Don R. Richardson, deceased, sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above named respondent, consisting of injury sustained by reason of gunshot wound, occurring on January 24, 1967, as a result of which he died on January 24, 1967."

and entered an award in favor of the claimant for the sum of $13,500.00 death benefits under the provisions of the Oklahoma Workmen's Compensation Act. The State Industrial Court affirmed the award.

■ The question of whether an injury sustained by an employee arose out of and in the course of employment is one of fact to be determined by the State Industrial Court under the circumstances of each particular case, and when there is competent evidence reasonably tending to support the finding it will not be disturbed on review, Garvin County v. Pierce, Okl., 406 P.2d 460.

■ Counsel for the respondent urges that since deceased was dressing preparatory to leaving his home, that the injury which resulted in his death did not arise out of and in the cause of his employment. To strengthen their contention respondent's counsel asserts that deceased was not "on duty", even though he was "on call" twenty four hours a day and further that he had other business interests, i. e. car salesman and managed a garage. Counsel for respondent further asserts that deceased was not required to wear guns.

It is not seriously advanced by the respondent's counsel that deceased was handling his guns that morning of the 24th of January 1967, preparatory to selling a car or working in the garage. It is customary that a peace officer carry firearms as a necessary tool of his trade. The deceased employer knew and approved of deceased carrying and wearing firearms upon his

person. It is undisputed that deceased was within his jurisdiction when injured. He was inside of his home which was used as a place for receiving telephone calls and where the local citizens were informed by his employer to contact the sole police authority in town. He was in effect at his master premises as well as his own.

If this accident had occurred in a police station while putting on his uniform there would be no dispute that the injury arose out of his employment. Davenport had no police station. The only police station was the home of the deceased. He was in the process of putting on his uniform, that is his shirt and jeans, which he customarily wore as a policeman.

The testimony clearly indicates that deceased was "in service" twenty four hours a day for his employer and sometimes would only sleep from 3 to 5 hours a night, or to be more precise in the early morning hours. The deceased had no "hours on" or "hours off" duty. He did not work a shift or punch a time clock. He was *the* law enforcement officer twenty four hours a day, seven days a week. He was hired by his employer with this understanding.

The deceased had in his possession at the time of his death a commitment order, which he had been directed to serve by the municipal judge. He had requested to be awakened that morning as was his custom. He had an appointment on the morning of the accident with a person regarding police business. The carrying and handling of firearms was related and incidental to his employment. The pistol, which accidentally discharged and inflicted the fatal wound, had no other purpose except for his employment as a policeman.

We are of the opinion that there is sufficient evidence to support the finding of the Industrial Court.

Award sustained.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, LAVENDER, and McINERNEY, JJ., concur.