691 A.2d 400

BABETTE W. MONEY, PETITIONER–RESPONDENT, v. COIN
DEPOT CORPORATION, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 15, 1997—Decided April 9, 1997.

Before Judges SKILLMAN, RODRÍGUEZ and CUFF.

*Francis T. Giuliano* argued the cause for appellant (*Mr. Giuliano*, of counsel and on the brief; *David P. Kendall*, on the brief).

*David A. Walker* argued the cause for respondent (*Thomas E. Hood*, attorney; *Mr. Walker* and *Richard W. Carlson*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

In this workers' compensation death case, a judge of compensation concluded that the decedent's self-inflicted gunshot wound to the head, suffered while he was playing "Russian Roulette" at work, "[arose] out of and in the course of employment," and was therefore compensable. We reverse.

The decedent, Bruce Money, was employed by respondent Coin Depot Corporation as an armored truck security guard. The decedent was required to carry a handgun while performing this job. On August 17, 1989, the decedent was assigned with two other guards to one of respondent's armored trucks. As the three men were driving along a highway carrying a load of money, the decedent pulled out his gun, put a bullet in the cylinder, spun the cylinder, placed the gun against his chin, and pulled the trigger. The gun did not discharge. The decedent then spun the cylinder again, placed the gun back against his chin, and pulled the trigger a second time. This time the gun fired, killing him instantly.

The decedent's widow, petitioner Babette Money, subsequently filed a workers' compensation claim petition, seeking dependency benefits from respondent. After a four day hearing which took nearly a year and a half to complete, the judge of compensation issued an oral opinion which concluded that the decedent died in an accident arising out of and in the course of his employment. The judge found that the decedent "did not intend to kill himself." The judge also found that respondent was aware of "Money's propensity to play Russian Roulette." Relying upon cases which hold that when an employer requires its employees to use a dangerous instrumentality such as a gun, an accident resulting from that instrumentality may be found to arise out of the employment, *see, e.g., Diaz v. Newark Indus. Spraying, Inc.,* 35

*N.J.* 588, 592, 174 *A.*2d 478 (1961), the judge concluded that even though "Money's gun play may have been a deviation from his employment," the deviation was "minor in nature" and therefore the accident was compensable.

 To be compensable under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –142, an accident must "aris[e] out of and in the course of employment." *N.J.S.A.* 34:15–7. The phrase "arising out of" employment refers to the "causal origin" of an accident and the phrase "in the course of" employment refers to "the time, place, and circumstances of the accident in relation to the employment." *Coleman v. Cycle Transformer Corp.*, 105 *N.J.* 285, 288, 520 *A.*2d 1341 (1986) (quoting 1 A. Larson, *Workmen's Compensation Law* § 6.10 (1985)). To be found to have "aris[en] 'out of' the employment," the risk of an accident "must be of such nature" that it "might have been contemplated by a reasonable person when entering the employment, as incidental to [that employment]." *Id.* at 289, 520 *A.*2d 1341 (quoting *Rafferty v. Dairymen's League Coop. Ass'n*, 16 *N.J. Misc.* 363, 366, 200 *A.* 493 (Dep't Labor 1938)). "A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." *Ibid.*

 Applying this basic test, the Supreme Court has identified three categories of risks which may result in an accident arising out of an employment: risks "distinctly associated" with the employment, such as an employee's fingers getting caught in a machine; "neutral" risks, such as an employee getting struck by lightning while on the job; and risks that are "personal" to an employee, such as a non-work related heart attack suffered while on the job. *Id.* at 290–92, 520 *A.*2d 1341. The Court has described "personal risks" as including those which arise from the "personal proclivities" of the employee and that consequently have a "minimal" connection to the employment. *Id.* at 292, 520 *A.*2d 1341 (quoting *Howard v. Harwood's Restaurant Co.*, 25 *N.J.* 72, 85, 135 *A.*2d 161 (1957)). Accidents resulting from risks which are "distinctly associated" with the employment or "neutral" are com-

pensable, but accidents resulting from "personal" risks are non-compensable. *Id.* at 291–92, 200 *A.* 493.

We conclude that the decedent's self-infliction of a fatal gunshot to his head resulted from a risk which was "personal" to him. The decedent's game of Russian Roulette was not a normal incident of his employment. It was a purely personal activity which was inimical to his employer's interests. It also was an activity which decedent, who kept guns in his house and regularly shot handguns at a shooting range, could just as easily have engaged in while drinking in a local bar or riding in his own automobile with friends. Moreover, even assuming decedent had no intention of taking his own life, his game of Russian Roulette was highly aberrant conduct which created a substantial risk of personal injury totally unrelated to the risks inherent in the normal conduct of the employer's business.

The circumstances of decedent's accident were significantly different from the "horseplay" cases relied upon by the judge of compensation. For example, in *McKenzie v. Brixite Mfg. Co.*, 34 *N.J.* 1, 166 *A.*2d 753 (1961), the petitioner "playfully touched" one of his coemployees between the buttocks. This touching caused the coemployee to turn around suddenly with a hot scraper, which accidentally struck the petitioner. Under these circumstances, the Court concluded that the horseplay was "an incident of employment." *Id.* at 6, 166 *A.*2d 753. Similarly, in *Diaz v. Newark Indus. Spraying, Inc., supra,* the petitioner, who was cleaning window frames with a water hose, twice playfully squirted water on a coemployee's legs. In retaliation, the coemployee turned around and threw the contents of a pail which he thought contained water but which in fact contained lacquer thinner. As a result, a nearby open flame caused the lacquer thinner to ignite, severely injuring the petitioner. Although the employer was not aware of this activity, the Court held the accident to be compensable, adopting the view that accidents resulting from horseplay on the job may be found to "arise out of employment" so long as the "deviation" from the normal course of employment "can be considered minor." 35

*N.J.* at 591, 174 *A.*2d 478. In contrast, the decedent's personal game of Russian Roulette, from which his coemployees attempted to dissuade him, constituted a major deviation from the normal course of employment which created a substantial and extraordinary risk of physical harm to petitioner and his coemployees. Therefore, the decedent's accident did not "arise out of" his employment.

This case is similar to *Gibbs v. Orange County Sheriff's Dep't,* 149 *A.D.*2d 845, 540 *N.Y.S.*2d 35 (App.Div.1989), in which our counterparts in New York reversed an award of workers compensation to the survivors of a deputy sheriff who fatally wounded himself while playing Russian Roulette at work. The court concluded that this activity constituted such a substantial deviation from a law enforcement officer's ordinary performance of his duties that it was not compensable:

> Decedent well knew that the gun was not empty when he intentionally pulled the trigger. Thus, his conduct in playing the highly dangerous game of Russian roulette cannot be described as merely a common playful prank or trifling act of foolery, which decedent could have considered harmless on the facts as he then believed them to be. Nor can decedent's manifestly dangerous conduct be characterized as a momentary, reasonable exercise of one's curiosity during a period of idleness in employment duties. Absent here also was any evidence that decedent's conduct was engaged in by other employees before this tragic event or that it had been a common practice, which might support the inference that his activity had become, in effect, an incident of his employment.
>
> [*Id.* at 847, 540 *N.Y.S.*2d 35 (citations omitted).]

We add that *Gibbs* and this case differ significantly from the out-of-state cases relied upon by petitioner, in which police officers were injured or killed when they discharged guns accidentally while putting on their uniforms or cleaning their weapons, which were clearly work-related activities. *See, e.g., Neel v. State Distribs., Inc.,* 105 *N.M.* 359, 732 *P.*2d 1382 (1986), *cert. quashed,* 105 *N.M.* 358, 732 *P.*2d 1381 (1987); *Town of Davenport v. Richardson,* 447 *P.*2d 755 (Okl.1968).

Finally, there is no competent evidence to support the judge of compensation's finding that respondent acquiesced in the decedent playing Russian Roulette on the job. Armando Laureano, whose testimony the judge relied upon to support this finding, only

testified that there were rumors within the company that the decedent would sometimes play Russian Roulette and that he assumed management was aware of those rumors. Laureano could not identify any specific management representative who was made aware of those rumors or how this information would have come to management's attention. Because Laureano's testimony regarding this subject was pure speculation, it did not provide an adequate foundation for the judge of compensation's finding. Therefore, we have no occasion to decide whether an accident resulting from an employee playing Russian Roulette while on the job would be compensable in the improbable event that an employer actually acquiesced in such a dangerous activity.

Reversed.