722 A.2d 515

HECTOR CRUZ–MENDEZ, PLAINTIFF–RESPONDENT, v. ISU/INSURANCE SERVICES OF SAN FRANCISCO AND FIREWORKS BY GIRONE, INC., DEFENDANTS, AND JOHN D. FENN AS REPRESENTATIVE OF CERTAIN UNDERWRITERS AT LLOYDS, LONDON, CNA REINSURANCE OF LONDON, LTD., ST. PAUL FIRE AND MARINE INSURANCE COMPANY (U.K.) LTD. AND UNIONAMERICA INSURANCE COMPANY, LTD., DEFENDANTS–APPELLANTS.

Argued September 28, 1998—Decided January 13, 1999.

558

*Christopher R. Carroll* argued the cause for appellants (*Nicoletti Kissel & Pesce* and *Carroll, McNulty & Kull,* attorneys; *Mr. Carroll* and *Charles Hyman,* of counsel).

*Kenneth A. Berkowitz* argued the cause for respondent (*Blume Goldfaden Berkowitz Donnelly Fried & Forte* and *Budd Larner Gross Rosenbaum Greenberg & Sade,* attorneys; *Mr. Berkowitz* and *Donald P. Jacobs,* of counsel and on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

Plaintiff, Hector Cruz–Mendez ("Cruz–Mendez") or ("plaintiff"), was injured after lighting a firework left from a display exhibited by Girone, Inc. ("Girone") for the Montclair Golf Club ("Golf Club"). The primary issue is whether plaintiff may maintain a strict-liability claim directly against Girone's insurers based on an insurance policy that they issued pursuant to *N.J.S.A.* 21:3–5. Other issues include whether plaintiff must prove that the fireworks display was a proximate cause of his injury and whether plaintiff's comparative negligence, *N.J.S.A.* 2A:15–5.1 to –5.8, constitutes an affirmative defense.

## I.

On July 4, 1991, the Golf Club sponsored a fireworks display on its property in the Township of West Orange ("Township"). Five days after the display, Cruz–Mendez, a Golf Club grounds keeper, found a firework in the glove compartment of a golf cart used for groundskeeping. He recognized the device as a firework, which he said looked "similar to the ones [he] had cleaned up on July 5th." Cruz–Mendez removed the firework from the glove compartment. The fuse was burned. He believed that the firework had exploded. Nevertheless, Cruz–Mendez enlarged a small hole in the device with a "small shovel" to reach an unburned part of the fuse. Then he lit the fuse. The firework exploded, injuring his left hand.

Before conducting a fireworks display in New Jersey, the exhibitor must obtain a municipal permit. Grant of the permit is subject to the conditions of *N.J.S.A.* 21:3–3 and –5. *N.J.S.A.* 21:3–3 provides:

> The governing body of any municipality ... may, upon application in writing, upon the posting of a suitable bond, grant a permit for the purchase, possession and public display of fireworks by municipalities ... or other organizations or groups of individuals, approved by the governing body of such municipality to whom the application is made. The governing body is authorized by resolution, to grant such permission when such display is to be handled by a competent operator, to be approved by the chiefs of the police and fire departments of the municipality....

After such permit shall have been granted, sales, possession, and use of fireworks for such display shall be lawful for that purpose only.

*N.J.S.A.* 21:3–5 provides:

The governing body of the municipality shall require surety which may be cash, government bonds, personal bond, or other form of insurance in a sum of not less than twenty-five hundred dollars ($2,500.00), conditioned for the payment of all damages, which may be caused either to a person or persons or to property, by reason of the display so as aforesaid licensed, and arising from any acts of the licensee, his agents, employees or subcontractors. Such surety shall run to the municipality in which the license is granted, and shall be for the use and benefit of any person, persons, or the owner or owners of any property so damaged, who is or are authorized to maintain an action thereon, or his or their heirs, executors, administrators, successors or assigns.

Girone and the Golf Club agreed in a written contract on the procedure for obtaining the permit from the Township. Girone promised to provide the Golf Club with a fireworks pyrotechnician, as well as other personnel, materials, and equipment. Additionally, Girone agreed to "furnish PUBLIC LIABILITY AND PROPERTY DAMAGE INSURANCE in accordance with the limits set forth by the governing body having jurisdiction naming CUSTOMER [the Golf Club] as additional insured." In turn, the Golf Club agreed to provide Girone with "all necessary permits," a "Permit Authorization Form," and an "Insurance Requisition Form."

On April 8, 1991, Joseph B. Dillenbeck, a vice president of the Golf Club, completed and delivered to Girone the Insurance Requisition Form, which indicated that the Golf Club and the Township were to be named as additional insureds in the Certificate of Insurance ("Certificate"). The Certificate ultimately named Girone, the Golf Club, and the Township as insureds. It stated that the insurance policy (the "policy") provided "General Liability Insurance," including "Premises/Operations," "Contractual Liability," "Products/Completed Operations," and "Public Display" coverage. The Golf Club submitted the Certificate, as part of its "Application for Permission to Conduct Fireworks Display," to the Township.

When completing the application, in response to the question, "Is this application accompanied by the Surety Bond required by Chapter 51 of the Laws of 1937?" the Golf Club answered: "Yes."

Despite this response, Mr. Dillenbeck testified on deposition that he understood the policy as "strictly a liability coverage for both personal injury and property damage, and I assume that's what the Township means when they refer to surety. It's really not the correct term."

In a resolution that tracked the terms of *N.J.S.A.* 21:3–5, the Township approved the Golf Club's application for a fireworks-display permit, subject to the following condition:

> Proof of general liability in the sum of $1,000,000 and $2,000,000 providing for the payment of all damages to persons and/or property arising from any acts of the licensee, its agents, employees or subcontractors with the Township of West Orange and the Montclair Golf Club as additional insureds and shall be for the use and benefit of any person, persons or owner or owners of any property so damaged who is or are authorized to maintain an action thereon, or his or their heirs, executors, administrators, successors or assigns.

The policy was a standard policy issued to members of the American Pyrotechnic Association. Girone previously had been covered under an identical policy for the two prior years. For the period of January 1, 1991, to January 1, 1992, the policy provided "general liability" and "display or special effects liability" coverage, with limits of $1 million per accident and $2 million in the aggregate. The policy stated:

> Underwriters agree subject to the Insuring Agreements, Exclusions, Conditions, Definitions and Declarations contained in this Policy, to indemnify the Insured ... in respect of their [sic] operations anywhere in the World, for Ultimate Net Loss by reason of the liability imposed upon the Insured by law or assumed under contract, for damages in respect of a Claim ... which arises solely by reason of:
>
> a. Bodily Injury
>
> b. Property Damage
>
> resulting from an Accident.
>
> &ast; &ast; &ast;
>
> [T]he following are included in the definition of the 'Insured' under this Policy:
>
> a) the Named Insured ...
>
> ...
>
> d) any person or entity to whom the Insured is obligated by virtue of a contract to provide insurance such as is afforded by this Policy ...
>
> e) ... those entities for whom the Insured requires coverage subsequent to the inception date of this Policy ...

f) and the Insured's employees but only for acts within the scope of their employment by the Insured.

\* \* \*

Liability to pay under this Policy shall not attach unless and until the Insured has, with Underwriters' prior written consent, paid an amount of Ultimate Net Loss which exceeds the each Accident retention set out in Item 2 of the Declarations.

\* \* \*

The words 'Ultimate Net Loss', wherever used in this Policy, shall mean the total sum the Insured is obligated to pay through judgment or settlement, as damages resulting from a Claim. . . .

\* \* \*

Any amount for which Underwriters are liable under this Policy shall be due and payable solely to the First Designated Named Insured.

Plaintiff instituted a negligence action against the Golf Club, Girone, and Vineland Fireworks Co., Inc., a related company. Thereafter, plaintiff filed a second complaint, asserting under the policy a direct, strict-liability claim against Underwriters at Lloyd's, London, the issuer of the policy; ISU/Insurance Services of San Francisco, the brokers that procured the policy; and Girone. In January 1995, plaintiff named the Underwriters that issued the policy as additional defendants to the second complaint: CNA Reinsurance of London, Ltd.; St. Paul Fire and Marine Insurance Co. (U.K.) Ltd.; Unionamerica Insurance Company, Ltd.; and John D. Fenn as Representative of Certain Underwriters at Lloyd's, London (collectively, the "Insurers"). The Law Division dismissed the complaint against the Golf Club, from which plaintiff had received workers' compensation benefits.

Subsequently, plaintiff amended the second complaint to allege that Girone and the Insurers negligently represented that they had procured the surety required by law, when in fact they had not.

The Law Division consolidated all of the actions for discovery. On completion of discovery, Girone and the Insurers moved for summary judgment dismissing the complaint, and plaintiff cross-moved for summary judgment on liability.

The Law Division granted summary judgment for plaintiff. It interpreted *N.J.S.A* 21:3–5 to require the posting of surety, "designed to provide absolute protection to the members of the public without imposing upon them the obligation to demonstrate the fault on the part of the companies displaying such hazardous form of fireworks."

The court reasoned that the statute does not create an option to post either "surety" or "other form of insurance." Instead, the statutory requirement "or other form of insurance" denotes one specific form of surety. Further, Girone submitted the policy to satisfy the requirements of *N.J.S.A.* 21:3–5. The court concluded that the policy was one of suretyship. Consequently, the court permitted plaintiff to maintain a direct action on the policy for indemnification without regard to Girone's fault. Plaintiff's injury, according to the court, was caused by Girone's fireworks display. Lastly, the court concluded that Girone and the Insurers could not assert plaintiff's negligence as an affirmative defense.

For the purpose of making the Law Division's ruling final, *R.* 2:2–3(a)(1), the parties stipulated that the amount of damages was $750,000, that the summary judgment resolved all issues, and that Girone would be dismissed as a defendant. The Insurers also agreed to indemnify Girone.

The Appellate Division affirmed essentially for the reasons expressed by the Law Division. We granted the Insurers' petition for certification. 152 *N.J.* 193, 704 *A.*2d 23 (1997).

We now affirm in part, reverse in part, and remand the matter to the Law Division. We hold that plaintiff may maintain a direct cause of action under the policy against the Insurers. Plaintiff, however, must prove that the display was the proximate cause of his injury. The Insurers may rely on plaintiff's comparative fault as an affirmative defense.

## II.

The first issue is whether plaintiff may maintain a direct action against the Insurers. Generally, plaintiffs in tort actions

may not directly sue insurers. *See Tuckey v. Harleysville Ins. Co.*, 236 *N.J.Super.* 221, 226, 565 *A.*2d 419 (App.Div.1989) (holding that direct action against insurer failed to state claim on which relief could be granted). Here, the question is whether *N.J.S.A.* 21:3–5 and the policy provide an exception to the general rule.

In *McBride v. Maryland Casualty Co.*, 128 *N.J.L.* 64, 23 *A.*2d 596 (E & A 1942), a spectator, who was injured by an exploding rocket during a fireworks display, brought a direct action against the issuer of a surety bond insuring the display. Like plaintiff in the present case, the plaintiff in *McBride* first filed a negligence action against the fireworks exhibitor. The surety bond had been issued to satisfy the requirements of the predecessor to *N.J.S.A.* 21:3–5. The Court of Errors and Appeals interpreted the bond as authorizing a direct action against the surety regardless of fault. Although the Court recognized that the "gravamen of the complaint ... is breach of contract," it noted that the bond tracked "almost literally the language of the statute." *Id.* at 67, 23 *A.*2d 596. Reasoning that the bond was designed to extend to an injured party the identical rights granted by the statute, the Court interpreted the bond and statute as coextensive. The Court held that the plaintiff could proceed directly on the bond without first obtaining a judgment against the fireworks exhibitor. *Ibid.; see also Carlo v. Okonite–Callender Cable Co.*, 3 *N.J.* 253, 69 *A.*2d 734 (1949) (construing *McBride* as interpreting statute to authorize direct action on surety bond without proof of underlying negligence). For over half a century, fireworks exhibitors and their insurers have known that *N.J.S.A* 21:3–5 and its predecessor have authorized an injured party to maintain a direct action against the insurer of a fireworks exhibitor without proof of the exhibitor's fault.

Our own interpretation of the statute leads to the same conclusion. The Legislature's failure to modify the *McBride* Court's construction of the statute, although not dispositive, reflects acceptance of that construction. *Massachusetts Mut. Life Ins. Co. v. Manzo*, 122 *N.J.* 104, 116, 584 *A.*2d 190 (1991). That conclusion

becomes more persuasive on considering that the Legislature amended *N.J.S.A.* 21:3–5 by replacing the term "bond" with the phrase "surety which may be cash, government bonds, personal bond, or other form of insurance." Notwithstanding that amendment, the Legislature left unchanged the provision that permitted a direct action against a surety. The general word "surety" helps to define the ensuing specific terms, each of which, in turn, helps to define the other. *See Germann v. Matriss,* 55 *N.J.* 193, 220, 260 *A.*2d 825 (1970) ("It is an ancient maxim of statutory construction that the meaning of words may be indicated and controlled by those with which they are associated."). Fairly read, the amendment expands the permissible forms of surety instruments beyond bonds, while leaving in effect an injured party's direct cause of action against the surety. As defined by the statute, the word "surety" denotes a class of instruments that includes the term "other form of insurance." As "a form of insurance," general liability insurance thus meets the requirements of a "surety."

■ The nature of suretyship confirms our interpretation of the statute to permit a direct cause of action against the surety. A traditional suretyship contract involves three parties: an obligee who is owed a debt or duty; a primary obligor, who is responsible for the payment of the debt or performance of the duty; and a secondary obligor, or surety, who agrees to answer for the primary obligor's debt or duty. An obligee may bypass the primary obligor and enforce the obligation directly against the surety. *Restatement (Third) of Suretyship and Guaranty* § 51 (1995). The availability of a direct action against the secondary obligor distinguishes a "surety" contract from contracts of guaranty and indemnity. Under a guaranty contract, the guarantor, in a separate contract with the obligee, promises to answer for the primary obligor's debt on the default of the primary obligor. The absence of a relationship between the obligee and the secondary obligor distinguishes a contract of indemnity from one of guaranty. The secondary obligor's duty runs only to a primary obligor.

Notwithstanding the temptation elsewhere to blur the distinction between contracts of suretyship, guaranty, and indemnity, 74 *Am.Jur.*2d *Suretyship* § 2 (1974); *see, e.g., American Guar. Corp. of Cal. v. Stoody,* 230 *Cal.App.*2d 390, 41 *Cal.Rptr.* 69 (Ct.App. 1964) (acknowledging that California Legislature has abolished distinction between guarantors and sureties), the unique characteristics of suretyship remain intact in New Jersey, *Newark Fin. Corp. v. Acocella,* 115 *N.J.L.* 388, 180 *A.* 862 (Sup.Ct.1935) (explaining that surety undertakes "direct and primary" obligation, as distinguished from guarantor, whose obligation is "secondary" and "collateral"); *Peoples Nat'l Bank v. Fowler,* 73 *N.J.* 88, 372 *A.*2d 1096 (1977) (stating that "[i]n the classical suretyship, the surety was a party to the primary obligation"); *see also Fengya v. Fengya,* 156 *N.J.Super.* 340, 345, 383 *A.*2d 1170 (App.Div.1978) (holding that surety or guaranty contract is different from "liability or indemnity policy of insurance"). Presumably, the Legislature understood the term "surety" as including those characteristics. *See Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992) ("The words chosen by the Legislature are deemed to have been chosen for a reason."). So understood, the term "surety" in *N.J.S.A.* 21:3–5 designates a specific contractual relationship permitting a direct action against the surety.

In one respect, the surety instrument mandated by *N.J.S.A.* 21:3–5 differs from a traditional surety contract. Traditional suretyship expressly recognizes that the obligee may maintain a direct action under the contract against the surety. Under *N.J.S.A.* 21:3–5, by comparison, the injured party is not a party to the surety contract. The statute, however, fills the gap by expanding the class of obligees to include persons injured by the fireworks exhibit. Specifically, *N.J.S.A.* 21:3–5 provides that the surety "shall run to the municipality in which the license is granted, and shall be for the use and benefit of any person ... so damaged." The statute, however, does not otherwise alter the suretyship contract. *See Restatement (Third) of Suretyship and Guaranty, supra,* § 71 cmt. f (observing that most statutes that

mandate posting of surety to receive license provide that private persons harmed by licensee have action against surety).

Although the statute is in derogation of the common law, it need not be narrowly construed. The canon urging narrow construction of a statute in derogation of the common law must yield to the obvious intent of the Legislature. *Dacunzo v. Edgye*, 19 *N.J.* 443, 452, 117 *A.*2d 508 (1955). A canon of statutory construction is merely a means of interpreting legislative intent. As the *McBride* Court recognized, the Legislature, when enacting the predecessor of *N.J.S.A.* 21:3–5, intended to abrogate the common-law rule prohibiting direct actions against insurers. *McBride, supra,* 128 *N.J.L.* at 67, 23 *A.*2d 596.

Nor does the absence of privity between the surety and the injured party provide a defense. *See* 44 *Am.Jur.*2d *Insurance* § 1445 (2d ed.1982). By its terms, the statute remedies the absence of privity.

Finally, we reject the contention that *N.J.S.A.* 21:3–5, in directing municipalities to require a surety, is permissive, not mandatory. By using the word "shall" rather than "may" in stating that "the governing body of the municipality shall require surety," the Legislature obviously intended to mandate, rather than merely permit, a surety. In sum, we conclude that *N.J.S.A.* 21:3–5 requires an exhibitor applying for a permit to conduct a fireworks display to obtain a surety instrument providing for a direct action against the insurer. We now turn to the question whether the subject policy may be deemed such a surety.

The Insurers contend that, even if the statute requires the posting of surety, the policy can be read only as a general liability insurance policy. We disagree.

When interpreting a contract, our goal is to ascertain the "intention of the parties to the contract as revealed by the language used, taken as an entirety ..., the situation of the parties, the attendant circumstances, and the objects they were

thereby striving to attain." *Onderdonk v. Presbyterian Homes,* 85 *N.J.* 171, 184, 425 *A.*2d 1057 (1981) (quoting *Atlantic N. Airlines, Inc. v. Schwimmer,* 12 *N.J.* 293, 301, 96 *A.*2d 652 (1953)). With insurance policies, ambiguous contractual language is construed in favor of the insured and against the insurer. *Doto v. Russo,* 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995). Because insurance policies are often contracts of adhesion, we assume "a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992).

■ The Insurers argue that the policy's terms constitute the policy as one for indemnity, which would require plaintiff to obtain a judgment against Girone before recovering under the policy. Our reading of the policy leads us to a different conclusion. The policy stated that the Insurers would "indemnify the Insured ... for Ultimate Net Loss by reason of the liability imposed upon the Insured by law or assumed under contract." Furthermore, "[l]iability to pay under this Policy shall not attach unless and until the Insured has, with Underwriters' prior written consent, paid an amount of Ultimate Net Loss." Finally, the policy provided that "[a]ny amount for which Underwriters are liable under this policy shall be due and payable solely to the First Designated Named Insured."

■ Generally, when interpreting a surety agreement or other type of insurance policy, a secondary obligor "is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended by implication or by construction beyond the confines of its contract." *Eagle Fire Corp. v. First Ins. Co.,* 145 *N.J.* 345, 356, 678 *A.*2d 699 (1996). Departure from the policy terms may be appropriate when the policy is issued to satisfy a statutory requirement for the protection not just of the insured, but of the general public. 8 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4862 (rev. ed.1981). If the terms of an insurance contract diverge from the contracting parties' purpose in entering the contract, the focus

shifts to that purpose to determine coverage. Otherwise, an insurer could avoid liability through the simple expediency "of adopting a form that masks the transaction's substance." *Restatement (Third) of Suretyship and Guaranty, supra, Introduction* to Ch. 1. The mere absence of the term "surety" therefore, does not preclude an interpretation of the policy as one of suretyship authorizing a direct action.

The purpose of the policy was to satisfy the requirement of *N.J.S.A.* 21:3–5 that the exhibitor supply a surety to protect the public. The Insurers' choice of language may not circumvent that requirement. Girone acquired this policy for the sole purpose of satisfying *N.J.S.A* 21:3–5. It was contractually bound to provide surety, in the form of an insurance policy, to the Golf Club. Indeed, the Golf Club represented to the Township that its application to conduct the fireworks display was accompanied by the surety that *N.J.S.A.* 21:3–5 required.

Notwithstanding the expectations of Girone, the Golf Club, and the Township, the Insurers argue that they understood that the policy merely provided for indemnification. The argument is disingenuous. The subject policy was a standard policy issued only to members of the American Pyrotechnic Association conducting fireworks displays. In the two previous years, the Insurers had issued Girone this same policy. Girone conducts ninety percent of its fireworks displays in New Jersey. Furthermore, the Insurers revised the Certificate of Insurance specifically to include the Township as an "Additional Insured." To suggest that the Insurers did not realize that they were issuing the policy to satisfy the requirements of *N.J.S.A.* 21:3–5 is to ignore both the sophistication of the insurance industry and the facts of the case.

The Insurers' expectations, moreover, must yield to the objectively reasonable expectations of the insured. *Doto, supra,* 140 *N.J.* at 556, 659 *A.2d* 1371. Furthermore, an insurance policy issued to satisfy a statutory requirement for a suretyship should be liberally construed to effectuate the statutory purpose. *See Restatement (Third) of Suretyship and Guaranty, supra,*

§ 71 reporter's note; 9 *Appleman, supra,* § 5277; *see, e.g., Treasurer & Receiver Gen. v. Massachusetts Bonding & Ins. Co.,* 349 *Mass.* 256, 207 *N.E.*2d 684, 685–86 (1965) ("A bond given pursuant to a statute should naturally be construed to provide the coverage which the legislature has required as a condition of the right or relief which the statute gives." (quoting *United States v. Hartford Accident & Indem. Co.,* 117 *F.*2d 503, 505 (2d Cir.1941))). In sum, the policy should be construed to provide the required protection of the public against injury or damage from a fireworks display that the Legislature has deemed a threat to the public's health, safety and welfare.

 The statute leaves no doubt about the standard of liability applicable to one injured by a fireworks display. At common law, one injured by fireworks must prove the exhibitor's negligence. *See Robinson v. Unexcelled Mfg. Co.,* 104 *N.J.L.* 589, 141 *A.* 802 (E & A 1928) (refusing to impose absolute liability on exhibitor for injuries resulting from fireworks display). The statute's broad language, however, demonstrates a legislative intent to expand the scope of common-law liability. *N.J.S.A.* 21:3–5 provides that the surety instrument must be "conditioned for the payment of all damages, which may be caused ... by reason of the display ... and arising from any acts of the licensee, his agents, employees or subcontractors." The use of the adjectives "any" and "all" indicates a legislative intent to impose liability even when the display is conducted carefully.

 The legislative purpose confirms the plain meaning of the statute. When enacting the statute, the Legislature recognized that "[t]he sale, exposure for sale, use, distribution or possession of fireworks or pyrotechnics in the state of New Jersey ... [is] against the public health, safety and welfare of the people of the state of New Jersey." *N.J.S.A.* 21:3–1. That statement makes manifest that the Legislature imposed the surety requirement as part of an overall regulatory scheme to protect the public from a highly dangerous activity. The Legislature has recognized that fireworks, although colorful, are dangerous. A fireworks exhibitor

"is charged with knowledge that if injury ensues he will have acted at his peril." *Carlo, supra,* 3 *N.J.* at 264, 69 *A.*2d 734. The statute requires exhibitors to obtain insurance policies under which their insurers are strictly liable for injuries caused by fireworks displays. The cost of the risk of a fireworks display is thus borne not by the public, but by the exhibitors and their insurers.

Finally, our construction of *N.J.S.A.* 21:3–5 is consistent with the Court of Errors and Appeals' construction of the predecessor statute. In *McBride,* the Court held that the surety bond, and by extension the statute, entitles an injured party to bring a cause of action without proof of the exhibitor's fault. *McBride, supra,* 128 *N.J.L.* at 67, 23 *A.*2d 596.

In one respect, we deviate from the lower court's holding that as a matter of law plaintiff had satisfied the requirement of causation because the firework that injured his hand "was attributable to a fireworks display that was put on approximately five days earlier." Even in a strict-liability action, a plaintiff must prove causation. *See Coffman v. Keene Corp.,* 133 *N.J.* 581, 593, 628 *A.*2d 710 (1993). Causation generally consists of two elements. First, a plaintiff must show that the defendant's act or omission was the factual, or "but for," cause of the injury. Every occurrence related to an event such that, but for the event, the occurrence probably would not have happened is a factual cause of an injury. *See Conklin v. Hannoch Weisman,* 145 *N.J.* 395, 417, 678 *A.*2d 1060 (1996); *Ostrowski v. Azzara,* 111 *N.J.* 429, 439, 545 *A.*2d 148 (1988); *Kulas v. Public Serv. Elec. & Gas Co.,* 41 *N.J.* 311, 317, 196 *A.*2d 769 (1964); *Prosser & Keeton on Torts* § 41 (5th ed.1984). Second, even under a strict-liability standard, a plaintiff must prove that this factual cause was a proximate cause of the injury. *See* 31A *Am.Jur.*2d *Explosions and Explosives* § 42 (2d ed. 1989) ("Proximate cause must also be shown where a rule of strict or absolute liability is applied to damage or injury resulting from the use of explosives."); *Prosser & Keeton on Torts, supra,* § 41 (stating that causation, usually proximate causation, is an

"essential element of the plaintiff's cause of action for negligence, or ... for any other tort").

"Proximate cause," although a basic element of tort law, defies precise definition. The model jury instruction defines proximate cause as a "cause which naturally and probably led to and might have been expected to produce the accident complained of." *Scafidi v. Seiler*, 119 *N.J.* 93, 101, 574 *A.*2d 398 (1990) (quoting current *Model Jury Charges* (Civil) § 7.10). Other courts have defined "proximate cause" as a "cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Daniel v. Department of Transp.*, 239 *N.J.Super.* 563, 595, 571 *A.*2d 1329 (App.Div.) (quoting *Polyard v. Terry*, 160 *N.J.Super.* 497, 511, 390 *A.*2d 653 (App.Div.1978), *aff'd o.b.*, 79 *N.J.* 547, 401 *A.*2d 532 (1979)), *certif. denied*, 122 *N.J.* 325, 585 *A.*2d 343 (1990). Intervening causes that are reasonably foreseeable or are normal incidents of a risk, however, do not relieve a tortfeasor of liability. *Rappaport v. Nichols*, 31 *N.J.* 188, 203, 156 *A.*2d 1 (1959).

Consistent with these general principles, *N.J.S.A.* 21:3–5 contemplates proof of causation. Under the statute, an injured party may recover only for "damages, which may be caused either to a person or persons or to property, by reason of the display ... and arising from any acts of the licensee, his agents, employees or subcontractors." The term "caused" suggests that the Legislature intended to import proof of proximate cause. *See Westchester Fire Ins. Co. v. Continental Ins. Co.*, 126 *N.J.Super.* 29, 38, 312 *A.*2d 664 (App.Div.1973) (observing that phrase "caused by" clearly conveys idea of proximate cause). Similarly, the phrase "by reason of" also signifies the need to prove proximate causation. *See McNeilab Inc. v. North River Ins. Co.*, 645 *F.Supp.* 525, 535 (D.N.J.1986) ("The causal connection implied by the phrase 'by reason of' is normally that of proximate causation."). The use of the phrase "arising from" is consistent with that conclusion. *Compare Money v. Coin Depot Corp.*, 299 *N.J.Super.* 434, 437, 691

A.2d 400 (App.Div.) (holding that phrase "arising out of," in context of the Workers' Compensation Act, refers to "causal origin" of an accident), *certif. denied,* 151 *N.J.* 71, 697 *A.*2d 544 (1997), *with Westchester Fire Ins. Co., supra,* 126 *N.J.Super.* at 37, 312 *A.*2d 664 (interpreting phrase "arising out of," in insurance policy, to require showing of "substantial nexus," not proximate cause).

In an action on a surety contract issued to satisfy *N.J.S.A.* 21:3–5, therefore, a plaintiff must prove that the fireworks display is not only a "but for" cause, but also a proximate cause of his or her injury. Generally, the determination of proximate cause is an issue of fact for the jury. *Scafidi v. Seiler, supra,* 119 *N.J.* at 101, 574 *A.*2d 398; *Prosser & Keeton on Torts, supra,* § 41. Only in the rare case in which "it appears to the court highly extraordinary that [the actor's conduct] should have brought about the harm," will courts remove the issue of proximate cause from the jury. *Caputzal v. Lindsay Co.,* 48 *N.J.* 69, 78, 222 *A.*2d 513 (1966).

The facts of this case prevent our holding that the fireworks display was the proximate cause of plaintiff's injury. A jury could find that plaintiff's action in removing the firework from the glove compartment, drilling a hole in the device, and lighting the fuse constituted an intervening cause so unforeseeable that it breaks the chain of causation.

Similar considerations prevent the conclusion as a matter of law that the fireworks exhibit was not the proximate cause of plaintiff's injury. A jury could find it objectively foreseeable that someone might light an unexploded firework left after a display. Indeed, the regulatory scheme is designed not to prevent only injuries resulting directly from the display, but also those that are incidental to it.

Our opinion last term in *Vega v. Piedilato,* 154 *N.J.* 496, 713 *A.*2d 442 (1998), is distinguishable. In that case, a boy attempting to jump from the roof of one apartment building to another

tripped and fell into the air shaft between the buildings. The plaintiff argued that the owners of the apartment buildings were negligent in failing to implement various security measures to keep children off the roof, where they knew children would play. Reasoning that the plaintiff's attempted leap was an intervening cause, we held that no reasonable jury could find that the lack of security measures was the proximate cause of his fall. As a matter of law, the plaintiff's attempt to leap over the air shaft from one apartment building to another was not a foreseeable intervening cause.

The Insurers argue that the fireworks display cannot be the proximate cause of plaintiff's injury because the firework was found in the golf cart five days after the display, rendering this cause too remote in time and place. That argument, however, misconstrues the meaning of proximate cause. "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." *Powers v. Standard Oil Co.*, 98 *N.J.L.* 730, 119 *A.* 273 (Sup.Ct.1923). Our reading of the record leads us to conclude that a jury could find that the fireworks exhibition was a proximate cause of plaintiff's injury.

 The final issue concerns the effect of plaintiff's comparative negligence on the Insurers' liability under *N.J.S.A.* 21:3–5. That issue requires consideration of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.8, which provides that a plaintiff's own negligence may be considered in allocating liability among the parties. A plaintiff's negligence may diminish his or her recovery "by the percentage sustained of negligence attributable to the person recovering." *N.J.S.A.* 2A:15–5.1. The Act applies in strict-liability actions. *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 608–09, 691 *A.*2d 350 (1997); *see also Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 164, 406 *A.*2d 140 (1979) (holding that Act provides a defense in most strict-liability actions, except in some workplace injury cases in which worker had no meaningful choice whether to encounter risk). A plaintiff's fault is an affirmative defense in a strict-liability action if his or her conduct constitutes an "unreasonable and voluntary exposure

to a known risk." *Lewis v. American Cyanamid Co.*, 155 *N.J.* 544, 559, 715 *A.*2d 967 (1998); *Cartel Capital Corp. v. Fireco of N.J.*, 81 *N.J.* 548, 563, 410 *A.*2d 674 (1980). To establish an affirmative defense, therefore, the Insurers must prove that plaintiff voluntarily encountered the risk with actual knowledge of the danger. The mere fact that plaintiff was negligent will not suffice.

As in other strict-liability actions, we find the Act applicable in this case. Generally, a secondary obligor that issued a surety contract may present any defenses available to the insured. *Restatement (Third) of Suretyship and Guaranty, supra*, § 34. The availability of a direct action against the surety "do[es] not enlarge the insurer's liability, but merely enable[s] the injured person to succeed to the insured's rights against the insurer, with the consequence that defenses good against the insured are good against the injured person." 44 *Am.Jur.*2d *Insurance, supra*, § 1448.

In support of the argument that plaintiff's conduct may not mitigate his damages, plaintiff relies on a statement in *McBride* that "plaintiffs are entitled to prosecute [the surety bond] just as employees may prosecute suits on workmen's compensation policies, when the employee is injured, with or without negligence." *McBride, supra*, 128 *N.J.L.* at 67, 23 *A.*2d 596. This statement, however, refers not to the negligence of a plaintiff, but to that of a defendant. In *McBride*, the injured party was a spectator who was injured by an exploding rocket at the fireworks display. The spectator's contributory negligence was not an issue. Thus, the quotation from the *McBride* opinion on which plaintiff relies is irrelevant. We conclude that the effect of plaintiff's negligence and the allocation of responsibility among the parties, like the issue of proximate cause, is one for the jury. *See, e.g., Johansen v. Makita U.S.A., Inc.*, 128 *N.J.* 86, 94–95, 607 *A.*2d 637 (1992).

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the Law Division.

*For affirmance in part, reversal in part and remandment*— Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.