881 A.2d 1243

KAREN SMITH, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR BRENDEN WASNIEWSKI, A MINOR, PLAINTIFFS–RESPONDENTS/CROSS–APPELLANTS, v. FIREWORKS BY GIRONE, INC., AND LEXINGTON INSURANCE COMPANY, DEFENDANTS–APPELLANTS/CROSS–RESPONDENTS, AND TOWNSHIP OF DEPTFORD, DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND HARLEYSVILLE INSURANCE COMPANY OF NEW JERSEY, DEFENDANT/INTERVENOR–RESPONDENT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 1, 2005—Decided September 21, 2005.

274

Before Judges STERN, WECKER and GRAVES.

*Joseph M. Assam,* argued the cause for appellant Fireworks by Girone, Inc. (*Thomas Dempster, III,* attorney; *Mr. Assam* and *Stephen C. Wolf,* on the brief).

*John L. Slimm,* argued the cause for appellant Lexington Insurance Co. (*Marshall, Dennehey, Warner, Coleman & Goggin,* attorneys; *Mr. Slimm* and *Lila Wynne Williams,* on the brief).

*Louis J. DeVoto,* argued the cause for respondents/cross-appellants Karen Smith and Brenden Wasniewski (*Rossetti & DeVoto and Norris, McLaughlin & Marcus,* attorneys; *Mr. DeVoto,* of counsel and on the brief; *Haekyoung Suh,* on the brief).

*Robert A. Hicken,* argued the cause for respondent/cross-appellant Township of Deptford (*Capehart & Scatchard,* attorneys; *Mr. Hicken,* of counsel; *Patricia L. Dee,* on the brief).

*Lance J. Kalik,* argued the cause for respondent Harleysville Insurance Co. of New Jersey (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Mr. Kalik,* of counsel and on the brief; *Luciana Lalande,* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

This appeal is before us on remand from the Supreme Court. *Smith v. Fireworks by Girone, Inc.,* 182 *N.J.* 138, 861 *A.*2d 843 (2004). It arises from interrelated disputes regarding (1) the proper source of payment for a judgment against a municipality and in favor of a child injured after a fireworks display, and (2) the viability of a pretrial settlement between the injured child and the fireworks exhibitor and its insurer. We now reverse an order vacating the settlement, and we hold that the exhibitor's insurer is also responsible, in its role as a statutory surety, for the judgment against the municipality.

In May 1995, defendant Fireworks by Girone, Inc. ("Girone") conducted a fireworks display under contract with defendant Township of Deptford. One week later, plaintiff Brenden Wasniewski, a minor, found an unexploded firework in the park where the display took place. He took it home, lit it several weeks later, and was seriously injured. Plaintiff Karen Smith, individually and as guardian ad litem for her son, Brenden, sued Girone, Deptford, and Girone's insurer, Lexington Insurance Company. Deptford's own insurer, Harleysville Insurance Company of New Jersey, intervened.

## I.

The underlying facts and procedural history are set forth in *Smith v. Fireworks by Girone, Inc.,* 180 *N.J.* 199, 850 *A.*2d 456 (2004) (reversing our unpublished decision in Nos. A–3312–01T2 and A–3929–01T2 (App.Div. June 2, 2003)). Following is a summary of the facts, as well as the detailed procedural history relevant to the issues now before us.

On January 27, 1995, Deptford and Girone signed a written agreement for the 1995 celebration of "Deptford Day," to be held in a municipal park on Saturday, May 20, 1995. Girone had staged a yearly fireworks display for Deptford's May celebration every year for the previous twenty years. Pursuant to their contract, Girone agreed that it would furnish a licensed pyrotechnician, fireworks, and all personnel and equipment necessary to execute the fireworks display, and that it would also "furnish PUBLIC LIABILITY AND PROPERTY DAMAGE INSURANCE in accordance with the limits set forth by the governing body having jurisdiction naming [Deptford] as additional insured."

Deptford also agreed to obtain the necessary permits required under *N.J.S.A.* 21:3–3 for a fireworks display; to provide protection and a location for the display that met or exceeded the requirements of the National Fire Protection Agency Code for Fireworks Display; and to "be RESPONSIBLE for all POST DISPLAY CLEAN–UP with respect to removal of debris and POLICING of area AT FIRST LIGHT following the exhibition." Along with the contract was an eleven-page "program," which was "[c]opyright[ed]" by Girone. On page nine of its program, Girone stated that it would provide: "Insurance In the Sum of $2,000,000.00 Naming 'DEPTFORD FUN DAY' as additional insured."

Lexington issued policy number 5632414 to Girone, providing commercial general liability and "Display of Special Effects liability" coverage, with a limit of $2 million in the aggregate and $1 million for each occurrence. The policy ran from May 31, 1994 to May 31, 1995; it was renewed for the period May 31, 1995 to May

31, 1996. A Certificate of Insurance was issued to Deptford, naming it as an additional insured for the fireworks display at the park on May 20, 1995.[1]

On the evening of May 20, 1995, Girone proceeded with the fireworks display. Immediately following the display, Girone employees and Deptford's Fire Marshal conducted a post-display search. Six potentially live shells and various spent shells were found and turned over to Girone.

The following morning, the Fire Marshal returned to the park to search for additional fireworks. He explained that he "walked up and down the field [searching] while pushing my 2 year old daughter in a baby carriage." He found "empty tubes" and other spent fireworks debris, but no live shells.

One week after the display, ten-year-old plaintiff Brenden Wasniewski was riding his bike in the park with his father. He picked up one live firework shell and some spent fireworks debris both on and near the launch site. He disposed of the debris, but hid the live shell at home. On July 3, 1995, Brenden tried to light the live shell; it exploded in his dominant left hand, causing severe and permanent injuries.

In March 1997, plaintiffs filed a twenty-one count complaint in the Law Division against Girone, Deptford, and other, later dismissed defendants. In an amended complaint, plaintiffs added Lexington, Girone's insurer, as an additional defendant. The counts of the amended complaint relevant to this appeal were:

Counts One to Three against Girone for negligence, breach of contract, and strict liability;

Counts Four to Six against Deptford for negligence, breach of contract, and strict liability; and

---

[1] The coverage provided to Deptford by means of the Lexington policy, naming it as an "additional insured," arguably did not comply with Girone's contractual obligation to provide "Insurance In the Sum of $2,000,000.00 Naming 'DEPTFORD FUN DAY' as additional insured." No party has presented that argument, and we therefore do not address it further.

Count Twenty-three against Lexington for strict liability as surety, pursuant to *N.J.S.A.* 21:3–5, for personal injuries arising out of the fireworks display.

Deptford and Lexington filed cross-claims for contribution and indemnification against all codefendants. Deptford filed an amended answer and cross-claim seeking defense and indemnification from Girone, alleging that Girone was contractually obligated to provide $2 million insurance for Deptford, as well as defense and indemnification. In November 1999, plaintiffs moved to allow proofs at trial against Lexington as a direct defendant on the grounds that Lexington's liability arose from its role as a surety under *N.J.S.A.* 21:3–5. The motion was granted.

Thereafter, Deptford moved for summary judgment dismissing plaintiffs' complaint on several grounds. The motion judge dismissed plaintiffs' claims against Deptford alleging strict liability and seeking punitive damages, but denied summary judgment with respect to plaintiffs' negligence and breach of contract claims. The judge held that a reasonable factfinder could conclude that the combination of fireworks and the park could constitute a dangerous condition that would not entitle Deptford to immunity under the Tort Claims Act, *N.J.S.A.* 59:4–2.

Plaintiffs reached a settlement with Girone and Lexington. The nature and terms of the settlement were placed on the record in "friendly" proceedings, conducted pursuant to *Rule* 4:44–3, on two separate dates prior to the trial against Deptford. On September 4, 2001, in the presence of counsel for plaintiffs, for Girone, for Lexington, and for Deptford, the Law Division judge was advised that plaintiffs had agreed (subject to court approval of a settlement on behalf of a minor) to settle their claims against Girone and Lexington, but retained the right to a jury trial against Deptford.

Counsel for Lexington told the judge:

I've agreed with the plaintiff's [sic] attorney that the terms that are set forth are the only terms that are acceptable to him, the only terms on which this case can settle to the extent that it's being settled today.

. . . .

> The plaintiffs have indicated that the only other alternative available to Lexington to settle this case is a trial of all issues as to all parties. And that option is not acceptable to Lexington because it leaves their insured exposed to claims against their personal assets so this settlement has been arrived at by the parties.

Significantly, Lexington's counsel had written to plaintiffs' counsel, noting that the alternative of letting plaintiffs go to trial against Girone and Deptford was "unacceptable to Lexington, since it exposes *both the Township of Deptford* and Fireworks by Girone to the possibility of a verdict in excess of all available limits." (Emphasis added).

Deptford's counsel was present at that hearing, but merely noted that it was not a party to the agreement. Deptford's counsel told the judge:

> Your Honor, if I may add one thing. Mr. Hopkin [counsel for Lexington] said that the [sic] agreed to by all the parties. I just want to make it clear that Deptford Township was not made party to any of these agreements.
> THE COURT: Okay. That is so noted.

Under the settlement agreement, Lexington would pay out $977,300,[2] the sum remaining on the $1 million per occurrence policy covering Girone, and plaintiffs would release Lexington and Girone, while capping their claims against Deptford so that they could "never recover more against Deptford Township than their available insurance policy limits." Counsel for Lexington represented to the judge:

> The plaintiffs will cap their claim against the Township of Deptford at available limits of the Township of Deptford which have been represented as being a million dollars primary policy and a $4 million umbrella policy.[3] And the plaintiffs will not reach the personal or private assets of Deptford Township but only recover from available coverage.

The parties appeared again before the judge on September 10, 2001 to present the final terms of the settlement, including a structure for the major portion of the net settlement for Brenden's benefit (after deduction of attorney's fees, costs, and certain

---

[2] $952,300 was allocated to Brenden and $25,000 to his mother.

[3] Deptford had its own $1 million primary general liability policy with Harleysville, as well as a separate $4 million umbrella policy issued by Harleysville.

outstanding medical bills). That sum was to be $647,430.91, with $600,000 to be used to purchase the structured payout through two insurance companies. After all the details of the proposal were placed before the court, counsel for Deptford asked to add one "comment." Deptford's counsel neither objected nor agreed to the substantive terms of the settlement, but stated that he had "[n]o objection to the form" of the settlement. He expressly noted that there was an issue as to the amount of coverage provided by Lexington. The following colloquy occurred as to coverage:

MR. HICKEN [counsel for Deptford]: I have no questions just one quick comment if I may.

There was a representation made with respect to the limits of coverage. We don't necessarily agree with that, but that's for a different—

THE COURT: There is an issue between insurance carriers whether there are—

MR. HICKEN: How much coverage is actually there.

THE COURT: Yes, there is.

MR. HICKEN: I just didn't want my silence to be construed as somehow agreeing to that.

THE COURT: Okay. I understand you have a different—potentially different point of view because of the surety bond between the primary company and Deptford which is an interrelated matter between you and the company; right?

MR. HICKEN: Right.

The judge approved the settlement, finding it "reasonable" after noting that he had been discussing the matter with counsel and with the expected trial judge, "that for settlement purposes, that a number, approximately 1–5, 1–6, somewhere in that area has been placed on the file," and that "one remaining defendant" was involved. An order approving the settlement and the structured payment contract was entered the same day.[4]

The next day, Deptford filed a motion, purportedly pursuant to *N.J.S.A.* 59:9–2(e),[5] to determine "whether or not [Girone's] secu-

---

[4] The judge who approved the settlement was not the same judge who subsequently tried the case against Deptford and later vacated the settlement.

[5] That statute, part of the Tort Claims Act, is actually a form of collateral source rule that has not been argued in this case.

rity bond serves as a deduction or credit for any verdict rendered against Deptford." Deptford argued that Lexington's insurance policy acted as a surety bond for the Township under *N.J.S.A.* 21:3–5. Plaintiff opposed the motion, and the judge reserved decision until after the anticipated trial against Deptford, which was scheduled for early October.

Three days later, on September 14, 2001, Harleysville (Deptford's general liability carrier) moved to intervene to assert a cross-claim for coverage against Lexington. Harleysville argued that it was improper for Lexington to settle plaintiffs' claims without including Deptford, both because Lexington had a duty to defend and indemnify Deptford as an additional insured on the Lexington policy, and because Lexington had a statutory obligation to provide a surety bond to Deptford pursuant to *N.J.S.A.* 21:3–5.

Oral argument on Harleysville's motion was heard by the trial judge on October 1, 2001. The motion hearing involved discussion about who ultimately would pay plaintiffs for any recovery against Deptford. Lexington argued that it had paid its policy limits for the settlement and had no further obligations to plaintiffs on behalf of Deptford. Harleysville disagreed, citing the surety statute. Plaintiffs' counsel expressed a lack of concern about who would pay, as long as plaintiffs received the agreed settlement on behalf of Girone and Lexington, plus any verdict they might recover against Deptford. The judge granted Harleysville's motion to intervene but severed its coverage claims against Lexington from plaintiffs' negligence action and reserved decision on the Harleysville and Deptford motions on coverage until after the trial.

Plaintiffs' case was tried in early October 2001. Deptford was the only participating defendant. At the end of plaintiff's case-in-chief, the judge granted Deptford's motion to dismiss plaintiffs' contract claims, but denied Deptford's motion to dismiss based on the Tort Claims Act.

The jury answered special interrogatories, finding that: (1) after the fireworks display, the unexploded firework created a dangerous condition at Fasola Park; (2) the dangerous condition was a proximate cause of Brenden's accident; (3) the dangerous condition created a foreseeable risk of injury; (4) Deptford's action or inaction was palpably unreasonable; (5) Girone was negligent; (6) Girone's negligence was a proximate cause of Brenden's injuries; (7) Brenden was negligent; and (8) Brenden's negligence was a proximate cause of his own injuries.

The jury awarded total damages of $1.6 million, assessing comparative responsibility at 56% against Deptford, 33% against Girone (the non-participating defendant), and 11% as Brenden's contributory negligence. The judge molded the damages award and entered judgment of $896,000 against Deptford and $528,000 against Girone.

Harleysville then filed a motion for summary judgment on its cross-claim against Lexington for coverage. Harleysville argued that *N.J.S.A.* 21:3–5, as interpreted in *Cruz–Mendez v. ISU/Insurance Services of San Francisco*, 156 *N.J.* 556, 722 *A.*2d 515 (1999), required Lexington to pay up to the limits of the surety bond to plaintiffs on behalf of Deptford before satisfying any claim or settlement as to Girone.

After extensive argument, the trial judge vacated the $977,300 settlement between plaintiffs, Girone, and Lexington on the ground that the settlement was entered into under a mistake of fact. The judge held that the $952,300 paid to plaintiffs by Lexington under the voided settlement was actually paid first on behalf of Deptford, and that Deptford was entitled to satisfaction of the $896,000 verdict entered against it. Deptford therefore owed plaintiffs nothing more. Finally, the judge entered judgment against Girone for $609,043.65, pursuant to the jury verdict. The judge reasoned that posting the Lexington liability insurance policy issued to Girone in lieu of a bond satisfied the requirements of *N.J.S.A.* 21:3–5 and did not affect the coverage owed to Girone under the same insurance policy, that is, that the Lexington policy

was actually two policies. Finally, the judge directed Lexington to reimburse Harleysville for 50% of the reasonable costs and fees incurred in defense of Deptford at trial.

We granted plaintiffs' motion to consolidate the several appeals arising out of the Law Division orders. In an unpublished decision, we held that it was error to set aside the settlement. We also affirmed the judge's ruling that Lexington was liable for half of Deptford's defense fees and costs up to the date of the jury verdict.

The majority of the panel reversed the judgment against Deptford, holding that it was immune under the Tort Claims Act, *N.J.S.A.* 59:9-4. The dissent, however, would have rejected Deptford's claim of immunity and ordered entry of judgment on the jury verdict against Deptford. The dissent also addressed the surety and coverage questions, which were not reached by the majority in light of its reversal of the judgment against Deptford.

The Supreme Court reversed on the Tort Claims Act immunity. *Smith v. Fireworks by Girone, Inc., supra,* 180 *N.J.* at 203, 850 *A.*2d 456. In a five-to-two ruling, the Court reinstated the verdict against Deptford, holding:

> [W]hen a public entity creates or suffers a dangerous condition on public property that leads ineluctably and foreseeably to injury, it is not insulated from liability under *N.J.S.A.* 59:4-2, even if the ultimate injury takes place off the public site at a point at which the public premises is no longer dangerous.
>
> [*Id.* at 217, 850 *A.*2d 456.]

The Court thereafter remanded the surety and coverage issues for our consideration. 182 *N.J.* 138, 861 *A.*2d 843.

## II.

Lexington argues that the trial judge erred (1) "in ruling that the pre-trial payment of $952,300 to [Brenden] was paid on behalf of ... Deptford;" (2) in entering "judgment against Girone in the amount of $609,043.65;" (3) "in ruling that Lexington breached its duty of good faith to protect ... Deptford;" (4) in holding that the Lexington policy was "by operation of law converted into a

separate bond with an additional limit of liability . . . , thereby increasing the limits from $1 million to $2 million;" and (5) in failing to acknowledge that "the single satisfaction doctrine bars any further claims against Lexington, either as an insurer or as a surety."

Girone argues that the trial judge erred (1) in vacating the settlement; (2) in crediting Lexington's payment under the settlement to Deptford; and (3) in entering judgment against Girone for the damages awarded by the jury in the trial against Deptford. Girone emphasizes that while it had notice of Deptford's post-trial motion to determine credit, "it had no notice that the trial court would act *sua sponte* to void the settlement . . . under mistake in fact theory." Lexington agrees that the Girone commercial liability policy must be deemed a surety bond, but nevertheless argues that creating a surety bond out of the policy cannot add an additional $1 million limit of liability.

Consistent with their pre-trial argument on the coverage motions, plaintiffs argue (1) that they are entitled to retain the settlement paid by Lexington on behalf of Girone; (2) that they are also entitled to payment on the judgment against Deptford, reflecting the jury's verdict; and (3) that the question of who pays the judgment is not plaintiffs' concern.[6] Plaintiffs contend in their cross-appeal that the judge erred by vacating the settlement and by triggering the surety provision of *N.J.S.A.* 21:3–5.[7] They argue that the statutory surety and the Supreme Court's opinion in *Cruz–Mendez, supra*, 156 *N.J.* at 556, 722 *A.*2d 515, are inapplicable when direct liability is assessed against a public entity

---

[6] Plaintiffs' counsel maintained in the January 11, 2002 argument on the coverage motions, that he did not care who paid the judgment on behalf of Deptford, as that was not his problem, but that the Lexington payment did not satisfy the judgment against Deptford.

[7] We infer that plaintiffs' argument against Lexington's role as surety reflects a concern that if the Lexington settlement payment is applied first to its surety obligation to Deptford, the settlement will be vacated or the policy limits exhausted, or both.

for its own negligent acts, rather than vicarious liability for the acts of the fireworks exhibitor. Plaintiffs argue that the surety was not triggered because their injuries did not arise from the acts of Girone, its agents, employees, or subcontractors. Not surprisingly, Lexington supports these arguments in its reply brief.

Deptford argues in response to Lexington's appeal (1) that the Law Division judge properly ruled that the money Lexington paid in settlement of plaintiffs' claims against Girone was required first to satisfy the surety obligation to Deptford; (2) that Deptford is therefore entitled to a credit for the full limit of its policy; (3) that Lexington breached its duty of good faith by obtaining a release of its direct liability as surety without obtaining a release for Deptford; and (4) that Lexington's obligation to Deptford is independent of any obligation to plaintiffs resulting from their settlement agreement.

Harleysville's argument largely mirrors Deptford's, with the additional argument that the Lexington surety obligation imposed by *Cruz–Mendez, supra,* 156 *N.J.* at 574, 722 *A.*2d 515, and by *N.J.S.A.* 21:3–5 for "all damages ... caused ... by reason of the display ... and arising from any acts of the licensee" includes Deptford's liability for its own negligence as well as its vicarious liability for Girone's negligence.

### III.

We first address the question whether the trial court erred in concluding that because the surety required by *N.J.S.A.* 21:3–5 (as a condition of obtaining the required license to perform a fireworks display) was fulfilled by the Lexington policy issued to Girone, Lexington's payment to plaintiffs in exchange for a release in favor of Girone and Lexington must be applied first as a credit against Deptford's liability on plaintiffs' judgment. We conclude that the judge correctly determined that the Lexington policy constituted the statutory surety, and that as surety, Lexington's

first duty was to protect Deptford from liability on the judgment in favor of plaintiffs, thereby protecting plaintiffs as well.

In reaching this decision, we have considered the legislative history of *N.J.S.A.* 21:3–5 as well as relevant case law. We begin with the statute itself, last amended in 1946:

> The governing body of the municipality shall require surety which may be cash, government bonds, personal bond, or other form of insurance in a sum of not less than twenty-five hundred dollars ($2,500.00),[8] conditioned for the payment of all damages, which may be caused either to a person or persons or to property, by reason of the display so as aforesaid licensed, and arising from any acts of the licensee, his agents, employees or subcontractors. Such surety shall run to the municipality in which the license is granted, and shall be for the use and benefit of any person, persons, or the owner or owners of any property so damaged, who is or are authorized to maintain an action thereon, or his or their heirs, executors, administrators, successors or assigns.

The law respecting fireworks displays was first enacted in 1930, when the Legislature declared that "[i]t shall be unlawful to manufacture, sell, transport or use dangerous fireworks within the state." *N.J.S.A.* 21:2–6. However, because of the large number of fireworks accidents that continued even after enactment of the prohibition, the Director of the State Department of Health in 1936 called for a more comprehensive state plan governing fireworks. J. Lynn Mahaffey, M.D., "State–Wide Ban on Fireworks," *N.J. Municipalities*, Oct. 1936, at 14–15. The Director suggested two courses of action: regulating the use of fireworks and prohibiting the use of fireworks "except in the hands of experts and by special permission of some local government agency." *Id.* at 14.

In 1937, as part of a comprehensive enactment, the Legislature declared that "[t]he sale, exposure for sale, use, distribution or possession of fireworks or pyrotechnics [is] against the public health, safety and welfare of the people of the [S]tate of New Jersey," and is illegal. *N.J.S.A.* 21:3–1, –2. The Legislature created an exception for public displays of fireworks:

---

8 The statute requiring a $2,500 minimum surety bond has never been amended to reflect present-day financial conditions, but municipalities such as Deptford obviously have required significantly higher coverage. *See N.J.S.A.* 21:3–3 (requiring a "suitable bond").

> The governing body of any municipality, other than a county, notwithstanding any of the provisions of this chapter to the contrary, may, upon application in writing, *upon the posting of a suitable bond,* grant a permit for the purchase, possession and public display of fireworks by municipalities, religious, fraternal or civic organizations, fair associations, amusement parks, or other organizations or groups of individuals, approved by the governing body of such municipality to whom the application is made.
> [*N.J.S.A.* 21:3–3 (emphasis added.)]

When originally enacted in 1937, the requirements of "a suitable bond" were described in *L.* 1937, *c.* 51, § 5 (*N.J.S.A.* 21:3–5) as follows: "[t]he governing body of the municipality shall require a bond deemed adequate by the municipality from the licensee in a sum not less than twenty-five hundred dollars conditioned for the payment of all damages. . . ." *N.J.S.A.* 21:3–5 was amended by *L.* 1946, *c.* 81, § 1 to its present form. The legislative history of the 1946 amendment provides that "[t]he purpose of this act is to regulate the posting of bonds or other collateral with municipalities, wherein public fireworks displays are held." Senate Bill No. 42 (N.J. Jan. 21, 1946).

Two reported cases in New Jersey have addressed the fireworks surety requirement of *N.J.S.A.* 21:3–5. In *McBride v. Maryland Casualty Co.,* 128 *N.J.L.* 64, 65, 23 *A.*2d 596 (E. & A.1942), the Court of Errors and Appeals addressed the 1937 version of *N.J.S.A.* 21:3–5. The Court affirmed the trial judge's ruling that the plaintiff, who was injured when a rocket exploded at a public fireworks display, "was under no obligation to prove negligence or fault on the part of [the exhibitor] to entitle her to recover from the Maryland Casualty Company which executed the bond in question." 128 *N.J.L.* at 66, 23 *A.*2d 596. The Court interpreted the bond as authorizing a direct action against the surety regardless of fault and without first obtaining a judgment against the fireworks exhibitor for negligence. *Id.* at 67–68, 23 *A.*2d 596.

Our decision with respect to Lexington's obligation as surety is informed by the Supreme Court's opinion in *Cruz–Mendez, supra,* 156 *N.J.* at 570–74, 722 *A.*2d 515. In that case, the Court addressed the current version of *N.J.S.A.* 21:3–5, which allows

"cash, government bonds, personal bond, or other form of insurance" to satisfy the bond requirement, and ruled that a fireworks contractor may use its general liability insurance policy to satisfy its obligation to post a surety bond as a condition of obtaining a license for the display, required by *N.J.S.A.* 21:3–5. *Cruz–Mendez, supra,* 156 *N.J.* at 570–73, 722 *A*.2d 515.

In *Cruz–Mendez,* the adult plaintiff was a golf club groundskeeper. He was injured when he lit an unspent firework that he found in a golf cart on the grounds, five days after a display that Girone had conducted for the club. *Id.* at 562, 722 *A*.2d 515. Girone was the fireworks exhibitor that had contracted with the golf club to undertake the display. *Ibid.* In accordance with their contract, Girone obtained a general liability insurance policy with limits of $2 million in the aggregate and $1 million for each occurrence. *Id.* at 564, 722 *A*.2d 515. The policy named the golf club and the township as additional insureds, in part to meet the condition of obtaining a license permitting the display. *Ibid.* The policy was a "standard policy issued to members of the American Pyrotechnic Association[,]" including Girone. *Ibid.* Like the Lexington policy involved here, the policy language described its coverage as general liability insurance; it was not labeled as a surety bond. *See ibid.*

The plaintiff in *Cruz–Mendez* filed a negligence complaint against the golf club and Girone, and then filed a second complaint alleging strict liability directly against the insurer on the insurance policy.[9] 156 *N.J.* at 565, 722 *A*.2d 515. The Court reaffirmed the holding of *McBride* that an injured party can maintain a direct action against the insurer of a fireworks exhibitor (whose policy served as surety) without proof of the exhibitor's fault. *Id.* at 567–68, 722 *A*.2d 515. The Court expressly noted that "[f]or over half a century, fireworks exhibitors and their insurers have known that *N.J.S.A.* 21:3–5 and its predecessor have authorized an

---

[9] The claim against the golf club was dismissed because the plaintiff had received workers' compensation benefits. *Ibid.*

injured party to maintain a direct action against the insurer of a fireworks exhibitor without proof of the exhibitor's fault." *Id.* at 567, 722 *A*.2d 515.[10]

Particularly relevant to the issue before us is Justice Pollock's explanation in *Cruz–Mendez* that by replacing the word "bond" in *N.J.S.A.* 21:3–5 with the phrase "surety which may be cash, government bonds, personal bond, or other form of insurance," the Legislature "expand[ed] the permissible forms of surety instruments beyond bonds." 156 *N.J.* at 568, 722 *A*.2d 515. The Court addressed the fact that a traditional surety instrument protects a party to the instrument itself, whereas the statutory surety under the fireworks law protects the municipality that issues the license as well as members of the public who may be injured as a result of the display. *Id.* at 569–70, 722 *A*.2d 515.

> In one respect, the surety instrument mandated by *N.J.S.A.* 21:3–5 differs from a traditional surety contract. Traditional suretyship expressly recognizes that the obligee may maintain a direct action under the contract against the surety. Under *N.J.S.A.* 21:3–5, by comparison, the injured party is not a party to the surety contract. The statute, however, fills the gap by expanding the class of obligees to include persons injured by the fireworks exhibit. Specifically, *N.J.S.A.* 21:3–5 provides that the surety *"shall run to the municipality in which the license is granted, and shall be for the use and benefit of any person . . . so damaged."* The statute, however, does not otherwise alter the suretyship contract.
>
> [*Ibid.* (emphasis added).]

Thereafter, the Court, declaring that "an insurance policy issued to satisfy a statutory requirement for a suretyship should be liberally construed to effectuate the statutory purpose," *id.* at 572, 722 *A*.2d 515, determined that Girone's "policy should be construed to provide the required protection of the public against injury or damage from a fireworks display that the Legislature has deemed a threat to the public's health, safety and welfare." *Id.* at 573, 722 *A*.2d 515. The Court's reasoning was that the

---

[10] In addition, the Court held that in order to prevail against the surety, the plaintiff must make a showing of proximate causation. *Id.* at 574–76, 722 *A*.2d 515. Finally, the surety could assert the plaintiff's comparative negligence as an affirmative defense. *Id.* at 578, 722 *A*.2d 515.

legislative recognition of the dangers of fireworks, *N.J.S.A.* 21:3–1, led to the imposition of

> the surety requirement as part of an overall regulatory scheme to protect the public from a highly dangerous activity.... A fireworks exhibitor "is charged with knowledge that if injury ensues he will have acted at his peril." [*N.J.S.A.* 21:3–5] requires exhibitors to obtain insurance policies under which their insurers are strictly liable for injuries caused by fireworks displays. *The cost of the risk of a fireworks display is thus borne not by the public, but by the exhibitors and their insurers.*
>
> [*Id.* at 573–74, 722 *A.*2d 515 (internal citations omitted) (emphasis added)].

In other words, even the cost of insuring against damage is to be borne by the commercial enterprise that stands to profit from the dangerous fireworks business, not by the municipality. That rationale is relevant to the decision we reach, because to require Lexington to cover the judgment against Deptford as surety, without resort to Deptford's own liability policy, protects the municipality against increased costs of, and perhaps reduced ability to obtain, liability insurance.

## IV.

We next address the settlement between plaintiffs, Girone, and Lexington. The issue that we confront here, the effect of the implied-in-law surety contract upon the insurer's obligation to its named insured and to plaintiff (under a settlement which did not include the municipality) did not arise in *Cruz–Mendez.* After the jury verdict here, the Law Division judge vacated the pre-trial settlement on the ground that there had been a mutual mistake of fact. We are satisfied that there was no mistake or other circumstance that justified the court in vacating the settlement.

It is well established that the public policy of this State favors settlement of litigation. *Herrera v. Tp. of South Orange Village,* 270 *N.J.Super.* 417, 424, 637 *A.*2d 526 (App.Div.1993), *certif. denied,* 136 *N.J.* 28, 641 *A.*2d 1039 (1994). A court may vacate a settlement agreement only upon a showing of fraud or compelling circumstances by clear and convincing proof. *Nolan by Nolan v. Lee Ho,* 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990). Compelling circumstances include "mutual mistake, undue haste,

pressure or unseemly conduct in settlement negotiations." *AT & T Corp. v. Tp. of Morris,* 19 *N.J.Tax* 319, 322 (2000). *See Lampley v. Davis Mach. Corp.,* 219 *N.J.Super.* 540, 549, 530 *A.2d* 1254 (App.Div.1987) (a settlement is voidable by the disadvantaged party when there has been a mutual mistake "as to a basic assumption on which the contract was made").

The basic rule is that where an insurance company has settled a claim based upon a mistake of fact, even a unilateral mistake, it is entitled to relief in the absence of prejudice to the payee. *See Young v. State Farm Mut. Auto. Ins. Co.,* 80 *N.J.Super.* 582, 586–87, 194 *A.2d* 488 (App.Div.1963); *see also Villanueva v. Amica Mut. Ins. Co.,* 374 *N.J.Super.* 283, 286–91, 864 *A.2d* 428 (App.Div.2005). Judge Conford, writing for this court in *Young,* concluded that when a payment of insurance proceeds is induced by a mistake of fact, the insurer can rescind the settlement as long as the settling claimant would not be prejudiced thereby. *Young, supra,* 80 *N.J.Super.* at 585–86, 194 *A.2d* 488. In *Young,* Judge Conford followed the rationale previously expressed in *Great American Insurance Co. v. Yellen,* 58 *N.J.Super.* 240, 156 *A.2d* 36 (App.Div.1959), where the insurer had rejected, but later mistakenly paid a claim as a result of a clerical error. *Id.* at 242–44, 156 *A.2d* 36. "[O]ne who has paid money under a mistake of fact but for which payment would not have been made may have restitution from the payee notwithstanding that the mistake was unilateral and a consequence of the payor's negligence, *providing, however, that such restitution will not prejudice the payee.*" *Id.* at 244, 156 *A.2d* 36 (emphasis added). Because the facts relevant to the issue of prejudice were not yet known, the matter was remanded for an evidentiary hearing. *Id.* at 247, 156 *A.2d* 36. *See also Hamel v. Allstate Ins. Co.,* 233 *N.J.Super.* 502, 506–08, 559 *A.2d* 455 (App.Div.1989).

Here, however, plaintiffs, as well as Lexington's insured, Girone, clearly would be prejudiced if the settlement were to be vacated. Girone did not participate in the trial of plaintiffs' claims, and cannot be bound by the jury's verdict (which, as it happens, was

less than the settlement). For their part, plaintiffs tried their case against Deptford alone, and should not be burdened with the expense and delay of a retrial. Additionally, a structured payout of the settlement was approved by the Court, and presumably has been executed. Prejudice to both parties is obvious.

Moreover, there is an exception to the general rule set forth in *Young* and *Yellen* in circumstances "where the insurance company deliberately elects to make payment of a claim on a policy although it is conscious that it does not know all the facts material to its liability to the payee." *Yellen, supra,* 58 *N.J.Super.* at 245, 156 *A.*2d 36. Here, the "mistake of fact" found by the trial judge and cited in the order vacating settlement apparently was Lexington's status as surety for the fireworks display and its resulting legal obligations to Deptford and to plaintiffs.[11] But the record is amply clear: in light of the 1999 Supreme Court decision in *Cruz–Mendez,* Lexington had to be aware when it settled plaintiffs' claims against Girone, as well as plaintiffs' direct claim against Lexington, that at the very least, there was an open question whether Deptford's own insurer, Harleysville, and not Lexington itself, would be primarily responsible for paying any judgment against Deptford. *See Cruz–Mendez, supra,* 156 *N.J.* at 569–70, 722 *A.*2d 515. Indeed, Lexington's awareness of its exposure to a direct claim evidences recognition of its liability under the surety statute, *N.J.S.A.* 21:3–5, and the holding of *Cruz–Mendez.* Yet Lexington chose to go ahead with the settlement with plaintiffs, knowing that it did not know two significant facts—the outcome of the trial and the outcome of the coverage dispute.

By choosing to settle plaintiffs' claims against Girone (and itself) with full knowledge that the outcome of the jury trial against Deptford, as well as the outcome of the surety coverage dispute,

---

[11] In his oral ruling, the judge said: "The release doesn't mean anything. The release doesn't mean anything because the release was, as you can well see, given under *a mistake of fact or mistake of law ....*" (Emphasis added.)

remained unresolved, Lexington placed itself within the exception described in *Yellen, supra,* 58 *N.J.Super.* at 245, 156 *A.2d* 36, and *Villanueva,* 374 *N.J.Super.* at 287, 864 *A.2d* 428. There was no question that the settlement was intended to be final as between plaintiffs, Girone, and Lexington. It was not conditioned upon the outcome of the trial or the resolution of the surety issue that had been raised by Deptford. Prior to trial, Harleysville moved to intervene in order to pursue the coverage dispute. In the course of addressing that motion, as well as several in limine motions just before choosing a jury, the trial judge explicitly preserved the coverage dispute for resolution after the scheduled trial of plaintiffs' claims against Deptford. Counsel for Lexington raised no objection, and did not attempt to argue that the settlement was contingent about the resolution of Deptford's coverage. Lexington has no right to withdraw from the settlement it made with awareness that subsequent determinations could affect its position. There was no mistake of fact, but only a mistake of judgment.

Several additional factors support the result we reach here. *McBride* and the fireworks statutes, *N.J.S.A.* 21:3–1 to –5, have been known to the fireworks industry as well as to the insurance industry serving those who sell and operate fireworks. Lexington had issued a similar policy to Girone in at least one previous year, and had on more than one occasion issued a Certificate of Insurance naming another municipality, where Girone was to conduct a fireworks display, as an "additional insured" on a general liability policy.

As the Court noted in *Cruz–Mendez,* where Girone's insurance policy was issued by a different carrier:

> Girone conducts ninety percent of its fireworks displays in New Jersey. Furthermore, the Insurers revised the Certificate of Insurance specifically to include the Township as an "Additional Insured." To suggest that the Insurers did not realize that they were issuing the policy to satisfy the requirements of *N.J.S.A.* 21:3–5 is to ignore both the sophistication of the insurance industry and the facts of the case. [156 *N.J.* at 572, 722 *A.2d* 515].

██ We do not suggest that an insurer who issues a commercial general liability policy will be at risk as a surety whenever its

insured undertakes to provide a third party with surety. The facts here are unique, involving as they do an insured in the business of manufacturing and conducting fireworks displays, which requires a municipal permit that in turn mandates surety as a condition of its issuance. Our holding, however, is based upon the conduct of the insurer which knew its role as surety and failed to act in good faith to protect the parties for whose benefit the suretyship was created. When Lexington chose to accept a release in its own favor and in favor of its named insured, without first protecting Deptford, it violated its duty as a surety and thereby exposed itself to a risk arguably greater than that which it originally undertook. Had there been no settlement, and had trial proceeded against Deptford and Girone, Lexington might well have been successful in limiting its overall liability to $1 million—to be paid out first to satisfy Deptford's judgment debt.

In holding Lexington liable for fulfilling its settlement on behalf of Girone, as well as covering the judgment against Deptford, we do not suggest that adding Deptford as an additional insured necessarily created a second policy that effectively doubled the aggregate coverage. Our holding is based upon the fact that Lexington, as surety, knowingly put Deptford at risk by first entering into a separate settlement with plaintiffs. There is no unfairness in the result.

We reverse the order vacating the settlement, reinstate the order approving the settlement, vacate the judgment against Girone, and remand for entry of an order requiring Lexington to pay the judgment against Deptford.

STERN, P.J.A.D. (concurring).

After the Supreme Court held "that when a public entity creates or suffers a dangerous condition on public property that leads ineluctably and foreseeably to injury, it is not insulated from liability under *N.J.S.A.* 59:4-2 even if the ultimate injury takes place off the public site at a point at which the public premises is no longer dangerous," and held that the municipality can be liable

to plaintiff for the explosion of the fireworks and reinstated the verdict of liability against Deptford Township, *Smith v. Fireworks by Girone, Inc.*, 180 *N.J.* 199, 217, 850 *A.*2d 456 (2004), the Supreme Court remanded to us for consideration of "the issues raised by defendant Lexington Insurance Company but not reached" by us in our original opinion. *Smith v. Fireworks by Girone, Inc.*, 182 *N.J.* 138, 861 *A.*2d 843 (2004). Plaintiff had settled with Fireworks by Girone and Lexington for $977,300 under its general accident policy before the trial against Deptford which resulted in a $1,600,000 verdict (apportioned 56% against Deptford, 33% against Girone and 11% against the plaintiff).

On this appeal, Lexington argues that "the trial court erred in ruling that the pre-trial payment of $952,300 to plaintiff, Brendan Wasniewski was paid on behalf of defendant Township of Deptford" and in ruling "that Lexington breached its duty of good faith to protect the Township of Deptford, leaving 'Deptford out to dry'"; that "the Lexington policy was not, by operation of law, converted into a separate bond with an additional limit of liability of one million dollars, thereby increasing the limits from $1 million to $2 million," and that "the single satisfaction doctrine bars any further claims against Lexington, either as an insurer or a surety." In essence, Lexington asserts that it has satisfied its obligation resulting from Brendan's tragic injury.

Plaintiff as cross-appellant contends that "the trial court erred in vacating the settlement between plaintiffs and defendants Girone and Lexington," that "defendant Deptford is not entitled to use the pretrial payment from Lexington to plaintiffs as a credit towards its portion of the verdict," and that "any disputes regarding insurance coverage are between Deptford and Lexington and do not affect plaintiffs' settlement with Girone and Lexington or plaintiffs' judgment against Deptford". Plaintiffs seek entry of a judgment of $896,000 plus post-judgment interest against Deptford, Harleysville Insurance Company (Deptford's carrier), or Lexington in their favor (in addition to the settlement of $977,300).

Girone claims it received no notice of any intent to vacate the settlement, and asserts the matter was settled as to it and that its obligation has been satisfied by its carrier, Lexington. Deptford similarly argues that its obligation has been properly satisfied because the trial judge was correct in ruling that Lexington's payment must be deemed to have been made in satisfaction of plaintiff's judgment against the Township—a view which Harleysville shares.

The trial judge's view that the settlement had to be vacated based on a "mistake of fact" has some appeal, but no party before us supports that conclusion. Given the policy favoring settlements, as articulated by the majority, and the fact that no party to the settlement seeks its vacation, which would require yet another trial, I join my colleagues in reversing the order vacating the settlement.

My colleagues' position, which requires Lexington to honor the judgment against Deptford, is reasonable. Lexington was fully aware of Deptford's contention that Lexington had an obligation to defend and indemnify it on the plaintiff's claim (because Lexington was surety and, independently, because Deptford was an "additional insured" on the Lexington policy), but settled in disregard and breach of that obligation, and therefore assumed the risk of any recovery by plaintiff against Deptford. But plaintiff also understood the legal issues flowing from *N.J.S.A.* 21:3-5 as well as the Tort Claims Act, and nevertheless released Lexington in accepting a settlement with it.[1] Thus, I am concerned that in settling with Girone and Lexington, plaintiff—also aware or charged with knowledge of the surety statute and the law concerning the surety's obligation—can be said to have released Lexing-

---

[1] I recognize that plaintiff apparently did not receive copies of Harleysville's letters, as Deptford's liability carrier, objecting to the settlement. In fact, Harleysville sought a defense from Lexington and a declaration that Lexington was obligated to pay the limits of the bond on behalf of Deptford before satisfying the liability of Girone.

ton, and discharged it from its obligation as carrier and surety with respect to plaintiff's claims.[2]

The trial court held that Lexington was liable under the surety bond to protect Deptford (on its obligation to plaintiff) prior to protecting Girone on its liability to plaintiff. As a result, the judge voided the settlement as a "mistake of fact," ordered Lexington to pay the $896,000 portion of the judgment allocated to Deptford (leaving no balance to that judgment), and entered judgment against Girone for its allocated amount of $528,000 plus interest (ultimately amended to $659,000), minus the $104,000 balance on the policy which was given as a credit to Girone. The judge also found that the bond, required by *N.J.S.A.* 21:3–5, did not replace Girone's liability policy,[3] and directed Lexington to reimburse Harleysville for the costs of defending Deptford. In essence, the judge treated the plaintiff as protected by Lexington's liability policy issued to Girone and to Deptford as "additional insured," and separately under a surety bond issued pursuant to statute.

But while the statute requires issuance of the bond or other coverage to protect an injured person, it expressly permits—as *Cruz–Mendez v. ISU/Insurance Services of San Francisco*, 156 *N.J.* 556, 722 *A.*2d 515 (1999), recognizes—that the liability policy can serve as the surety bond, so long as the required statutory

---

[2] In the briefs before us no party suggested a factual dispute as to the intent of the settlement or the need for a plenary hearing, although the question was considered at argument.

[3] The judge stated that Lexington "put up Deptford's money" and that the settlement proceeds were "paid by Lexington on behalf of Girone, when really it was paid by Lexington for Deptford, unbeknownst to Deptford and Lexington." The judge also found that, "by making Deptford an additional insured, it created an additional/million dollars surety bond ... to conform to the statute." The parties disagree as to whether Lexington was ordered to pay the excess above the $104,000 balance on the policy, in light of the conclusion that Lexington's bond did not affect its obligation to Girone as its insured. In no event can judgment be entered against Girone for an amount determined at a trial in which it did not participate due to the settlement.

coverage is provided. *Cruz–Mendez, supra,* 156 *N.J.* at 568, 572–73, 722 *A.*2d 515. Here, there is no genuine dispute that the liability policy, which included Deptford as an "additional insured," provided that protection, and that the policy was issued for the specific Deptford exhibition on display. I find it significant that there is no contention that Lexington did not deliver to Deptford a surety bond, or policy, satisfying its statutory obligation of "not less than twenty-five hundred dollars ($2,500.00)," *N.J.S.A.* 21:3–5, and no contention by Deptford, or plaintiff as third party beneficiary, that Girone did not satisfy its contractual obligation to provide the coverage it contracted to provide. Nevertheless, the trial court treated Lexington as having issued a policy and separate surety bond, each giving the plaintiff $1,000,000 in protection, as opposed to a policy with $1,000,000 in coverage for "each occurrence," which provided the protection the statute was designed to assure. In this regard, I believe the trial court was in error.

I join the majority in reversing the order vacating the settlement and in remanding for entry of judgment requiring Lexington to pay the judgment against Deptford as well as the settlement. The majority does so because of Lexington's conduct as surety when it "failed to act in good faith to protect the parties for whose benefit the surety was created." Op. at 295, 881 *A.*2d at 1256. The majority thus finds that by accepting "a release in its own favor and in favor of its named insured, without first protecting Deptford, [Lexington] violated its duty as surety and thereby exposed itself to a risk arguably greater than it originally undertook." Op. at 295, 881 *A.*2d at 1256. I need not go that far or necessarily find a breach of Lexington's duty as surety obligated to protect the injured member of the public. I would hold, substantially for the reasons stated by the majority, that Lexington breached the fiduciary duty it owed to Deptford as an "additional insured."

*Cruz–Mendez* permits injured persons to bring direct actions against the surety. *Cruz–Mendez, supra,* 156 *N.J.* at 567–68, 722

*A*.2d 515. It held "that plaintiff may maintain a direct cause of action under the policy against the Insurers." *Id.* at 566, 722 *A.*2d 515. *See also* 156 *N.J.* at 570, 722 *A.*2d 515 ("conclud[ing] that *N.J.S.A.* 21:3–5 requires an exhibitor applying for a permit to conduct a fireworks display to obtain a surety instrument providing for action against the insurer"). The carrier is not required to issue a bond separate from an insurance policy which satisfies the statute. *Id.* at 567–68, 722 *A.*2d 515. Among its claims plaintiff brought a direct claim against Lexington, and released Lexington knowing it was a surety when it settled with Lexington and its insured, Girone, under the policy. Thus, as a direct defendant, Lexington could satisfy its statutory obligation by settling the action on behalf of itself as surety and its insured.

The question is really whether the plaintiff's release of the surety ends Lexington's contractual and legal obligations in this case.

There is some basis for ruling that plaintiff understood the impact of the statute when she voluntarily settled her claims against Girone and Lexington, as surety, and thereby effectively released Deptford, which the statute was also designed to protect. But the settlement proceedings seemed to make clear that the direct claims remained for resolution against Deptford, and no one suggested at the time of settlement that the complaint would be dismissed against the Township. To the contrary, when the settlement was placed on the record in the presence of all the parties, plaintiff was told that while she could not recover anything further from Girone and Lexington, she "may" or "may not" collect from Deptford depending on the result of a possible "settlement" or "trial."

We might also consider holding that Deptford and its carrier, Harleysville, should be liable for the judgment against Deptford because neither affirmatively asked that the settlement be rejected if it did not include Deptford, thereby affecting the available balance of the $1,000,000 coverage for the single occurrence (and because Deptford did not contend that the statute or its contract were not satisfied by the policy issued). But the record does not

suggest that either Deptford or Harleysville acquiesced in the settlement to the detriment of the municipality in the event of an adverse judgment.

I join the majority in holding that Lexington must both honor the settlement and pay the judgment against Deptford, aggregating $1,873,000, which plaintiff obtained through negotiations and trial, notwithstanding the settlement with Lexington. I do so because Deptford was made an "additional insured" to which its carrier still owed a fiduciary obligation and not because the surety could not otherwise settle directly with plaintiff.

I am satisfied to concur in the judgment of my colleagues because the policy in question served to both insure Girone and provide the surety obligation under *N.J.S.A.* 21:3–5. Whether it had to do so or not, the policy named Deptford as an "additional insured." And while the settlement may well have been made to protect Girone from being exposed to a verdict above the policy limits, Lexington had the same obligation to protect Deptford as its "additional insured." [4] *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 489–93, 323 *A.*2d 495 (1974) (imposing on insurer "the most urgent duty to act in good faith and with diligence in attempting to arrange a possible settlement" given the factors of the case). *See also Webb v. Witt,* 379 *N.J.Super.* 18, 24, 876 *A.*2d 858 (App.Div.2005) ("[i]n discussing insurers' duties to their insureds, the case law does not distinguish between named insureds and additional insureds"). This it did not do. Simply stated, Lexington left its "additional insured" without coverage, as the policy limits had almost been exhausted as a result of the settlement. By settling with plaintiff on behalf of itself and Girone, Lexington knew, or should have known, the risks it was taking in light of its obligation to Deptford as an "additional insured."

I therefore concur in the judgment.

---

4 Lexington did protect Deptford to the extent plaintiff agreed that it would not seek to collect above Deptford's coverage through Harleysville.