**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1126-25

171 HILLSIDE LLC, NATALIE
GOODIS, AS BENEFICIARY
OF THE ARTICLE X GENERATION
SKIPPING TRUST OF THE
AMENDED AND RESTATED
BRIGITTE MIZRAHI LIVING
TRUST, and SOPHIE GOODIS,
AS BENEFICIARY OF THE
ARTICLE X GENERATION
SKIPPING TRUST OF THE
AMENDED AND RESTATED
BRIGITTE MIZRAHI LIVING
TRUST,

      Plaintiffs-Respondents,

v.

YEHUDA MAIMON and
ANDERSON INTERNATIONAL
FOODS, INC.,

      Defendants-Appellants.

_____

Submitted May 19, 2026 – Decided June 3, 2026

Before Judges Susswein and Chase.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000025-24.

Walsh Pizzi O'Reilly Falanga LLP, attorneys for appellants (Thomas J. O'Leary, of counsel and on the briefs; Mariel L. Belanger and Natalie H. Lucciola, on the briefs).

Rivkin Radler, LLP, attorneys for respondents (Gene Kang and Dylan Mruczinski, on the brief).

PER CURIAM

On leave granted, defendants Yehuda Maimon and Anderson International Foods, Inc. ("Anderson") appeal from four October 24, 2025 Chancery Division orders which granted plaintiffs' motion to vacate a settlement, restored the matter to the active trial calendar, and denied defendants' cross-motions seeking enforcement of the settlement, indemnity, and counsel fees. We vacate and remand.

I.

Defendant, Anderson, is a California corporation that operates a Kosher cheese business in Jersey City. Anderson was founded by Brigitte Mizrahi ("decedent"), who passed away in January 2020. Upon decedent's passing, defendant Yehuda Maimon—decedent's second husband—became president of Anderson.

Prior to decedent's death, she executed the Amended and Restated Brigitte Mizrahi Living Trust ("RBMT") and a last Will and Testament ("Will"). Plaintiffs, the daughters of Brigitte Mizrahi, Natalie and Sophie Goodis ("Natalie" and "Sophie"),[1] are named as direct beneficiaries of the RBMT pursuant to Article X, which created generation-skipping trusts for both Natalie and Sophie ("Natalie's Trust" and "Sophie's Trust"). Maimon was appointed as trustee of both plaintiffs' trusts and the trusts require the trustee to be at least thirty-five years old. Only Natalie is currently eligible to serve as trustee. Further, pursuant to the RBMT, Maimon received a thirty percent shareholder interest in Anderson. The remaining seventy percent shareholder interest is divided equally between Natalie's Trust and Sophie's Trust.[2]

Pursuant to Article 6.2 of the RBMT, Maimon was also given thirty percent of decedent's estate. Further, Article 6.2.1 required Anderson shareholders to: (1) elect Maimon as CEO, president, or an executive officer responsible for Anderson's day-to-day operations; and (2) permit Maimon to designate his own successor. Moreover, under Article 12 of the RBMT, Maimon

---

[1] Because the plaintiffs share a common surname, we identify them by their first name for the sake of clarity. No disrespect is intended.

[2] The parties colloquially refer to this as the "70/30 split"—i.e., seventy percent between plaintiffs' trusts and thirty percent with Maimon.

A-1126-25

retained the right to "continue to occupy," for life, residences that he and Decedent were using as a principal residence or a vacation home. Pursuant to Article 18, Maimon was designated as decedent's successor trustee. Insofar as he is unable, decedent's brother, Eric Mizrahi, is to be appointed, and thereafter, if Eric is unable, Robert Singer is to be appointed. Additionally, Article 18.10 fully indemnifies each individual trustee and only allows for liability for acts or omissions that constitute gross negligence or intentional misconduct.

Additionally, Natalie and Sophie are the sole members of plaintiff, 171 Hillside, LLC, ("Hillside"). Hillside owns real property, which it rents to defendant Anderson, located on Burma Road in Jersey City ("Property").

At the end of July 2023, Natalie emailed Maimon stating she wished to take over her mother's business and "prepare it for sale." Natalie also emailed Maimon and raised numerous issues regarding the operations and management of the trust and business including various types of financial mismanagement.

Plaintiffs originally filed a verified complaint for an order to show cause with temporary restraints on March 7, 2024.[3] In April 2024, the court granted the order to show cause and appointed Robert A. Kaye, as temporary successor trustee to the Natalie's and Sophie's trusts and as special fiscal agent for Hillside

---

[3] The parties have not provided the verified complaint.

4

A-1126-25

and Anderson. In September 2024, plaintiffs filed an amended complaint seeking, among other things, an injunction to remove Maimon as President of Anderson and to remove him as Trustee of the RBMT, Natalie's Trust, and Sophie's Trust. The amended complaint accused him of violating his fiduciary duties as trustee, engaging in self-dealing by funneling money from the RBMT to himself, commingling trust assets with his own assets, and alleging that Anderson owed Hillside past due rent. Defendants answered, denying the allegations, and filing a counterclaim against plaintiffs seeking various declaratory judgments and indemnification.

The matter was set for trial on March 10, 2025; however, on March 6, 2025, the parties agreed to a thirteen-point settlement. On the trial date, the parties appeared and read the settlement agreement into the record.

The material terms of the settlement agreement are summarized as follows:

> (1) plaintiffs would both transfer their interest in Anderson to Maimon; (2) Maimon would release any claim to a life estate in a Long Island vacation home ("Southold Residence"); (3) plaintiffs would permit Maimon to remove his items and effects from the Southold Residence; (4) Maimon, within five days of executing the agreement, would transfer $395,096.53 from the RBMT to Hillside; (5) Maimon would obtain the resignations of each successor trustee of the RBMT and, to the extent he was unable, the parties would

jointly petition the court to (a) cause the resignation of the successors, and (b) appoint Natalie and Sophie as co-trustees of the RBMT; (6) Anderson and Hillside would enter into a new triple net lease for a ten-year term with a five-year tenant option to renew—pursuant to that lease, (a) rent would be $26,000 per month with three percent annual increases, (b) Anderson would be responsible for repairs, maintenance, taxes, insurance, and utilities, (c) Maimon would provide a "good guy guarantee", (d) Anderson would have a six-month early termination right, and (e) Anderson would provide a four month security deposit; (7) "[t]he initial efforts of the parties [would] focus on the replacement of [Maimon] as Trustee"—the transfer of stock and execution of the lease was to happen simultaneously with Maimon's replacement; (8) Anderson would transfer automobile titles to Natalie and Sophie; (9) Natalie and Sophie, within five days of executing the agreement, would return Anderson issued American Express ("Amex") Cards; (10) Natalie and Sophie would resign from their positions at Anderson; (11) Maimon would withdraw his indemnification request; (12) Anderson, within five days of executing the agreement, would transfer $117,243.58 to the RBMT; and (13) all parties would execute mutual general releases waiving and releasing all claims against each other.

After the settlement was placed on the record, the court entered an order confirming the settlement and canceling the trial.

The parties then exchanged multiple drafts of the settlement agreement and a proposed new lease between Anderson and Hillside. During this time the parties jointly moved, to effectuate portions of the settlement agreement, to

6

A-1126-25

remove Eric Mizrahi as successor trustee and to appoint Natalie and Sophie as co-trustees of the RBMT upon Maimon's resignation. The trial court granted this motion. Additionally, after both plaintiffs used their Anderson Amex cards to pay for vehicle repairs and services, Maimon canceled the cards and eventually removed them from Anderson's payroll. Maimon also left the Southold Residence with his effects.

During the drafting of the agreement, issues were raised concerning: a tax refund which both parties claim the right to; issues with the lease of the property concerning who was responsible for repairs to the brick; and a lawsuit from a former employee of Anderson claiming he was owed five percent of the company upon sale or transfer.

Negotiations broke down entirely and no written document was signed. On September 24, 2025, plaintiffs moved to vacate the settlement. They argued that the issues which arose created compelling circumstances to set aside the settlement. Defendants cross-moved to enforce the settlement, for indemnity, and for the appointment of a special adjudicator.

On October 24, 2025, the trial court heard oral arguments on the parties' motions. Ultimately, the trial court granted plaintiffs' motion to vacate, and stated:

7

Okay. I'm granting the motion to set aside this settlement because I don't think that any of the clients and certainly none of the four lawyers that are on this call knew what they were doing or had all the facts in front of them and it's shameful. I particularly don't like the self-help exercised by Mr. Maimon when he said I don't like – I don't – it doesn't pass the smell test, these charges on the cards so, you know what I'm going to do, despite the fact that there's a settlement in the works, I'm going to cancel the credit cards and then he does the same thing with the health insurance and takes them off the payroll. That kind of self-help with a settlement agreement in play is shameful and bordering on bad faith. So the whole thing has unraveled.

The same day, the court issued separate orders: (1) granting plaintiffs' motion to vacate; (2) denying defendants' motion to enforce and cross-motion for indemnity; (3) appointing a Special Adjudicator to make recommendations regarding (a) tax refunds, liabilities, credits, and responsibilities, and (b) responsibilities to repair the Property; and (4) referring the matter to mediation and restoring the case to the active trial calendar.

Defendants' interlocutory appeal follows.

## II.

We begin with defendant's argument that the order vacating the settlement should be reversed and remanded because "the [trial] court erred by summarily vacating the [s]ettlement . . . without engaging in any analysis to determine

8

whether [p]laintiffs had presented clear and convincing evidence of compelling circumstances." We agree.

The question as to whether the parties have entered into an enforceable settlement agreement is a question of law, which we review de novo. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). Importantly, "[a] settlement agreement between parties to a lawsuit is a contract," Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which "arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 439 (App. Div. 2016) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)); Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005). In addition, the parties must agree "to the essential terms" of the settlement or "there is no settlement in the first instance." Cumberland Farms, Inc., 447 N.J. Super. at 438-39 (quoting Mosley v. Femina Fashions Inc., 356 N.J. Super. 118, 126 (App. Div. 2002)). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263

N.J. Super. 575, 596 (App. Div. 1993) (quoting Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (Ch. Div. 1987)), certif. denied, 134 N.J. 477 (1993).

We also review a motion to enforce a settlement de novo. Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023). "The party seeking to set aside the settlement agreement has the burden of proving [their] incapacity or incompetence or other extraordinary circumstances sufficient to vitiate the agreement."[4] Jennings, 381 N.J. Super. at 227 (App. Div. 2005) (citing Wolkoff v. Villane, 288 N.J. Super. 282, 291-92 (App. Div. 1996) (emphasis added)). "Interpretation of a settlement agreement implicates significant legal and policy principles, and the standard for vacating a settlement is not easily met." Kaur, 405 N.J. Super. at 474 (emphasis added).

Generally, courts do not vacate settlement agreements absent compelling circumstances. See id. at 474-75. Coercion, deception, fraud, undue pressure, unseemly conduct, or an inability to competently consent have been expressed as compelling circumstances to vacate a settlement. See Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div.), certif. denied, 137 N.J. 165 (1994)). See also AT&T Corp.

---

[4] Plaintiffs only raise arguments regarding extraordinary circumstances, as they did before the trial court.

v. Twp. of Morris, 19 N.J. Tax 319, 322 (Tax 2000) (finding "mutual mistake, undue haste, pressure[,] or unseemly conduct" can constitute other compelling circumstances (citing Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974))); Smith v. Fireworks by Girone, Inc., 380 N.J. Super. 273, 291-92 (App. Div. 2005).

It is unclear from the court's decision whether there was a finding that the matter was not fully settled or if it found compelling circumstances to set aside the settlement. Either way, plaintiffs' motion to vacate was based on disputed material facts concerning what information the parties knew and when; thus, the trial court was obligated to hold a plenary hearing before vacating the settlement. Cf. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 24 (2004) ("[A] plenary hearing should be conducted only when the certifications of counsel raise material factual disputes that can be resolved solely by the taking of testimony."). Thus, we remand this matter for a plenary hearing to determine if a settlement occurred and if compelling circumstances exist to set it aside. During the hearing, the court shall consider that the parties have already received certain benefits and losses, such as, the removal of Mizrahi as a successor trustee; Maimon's relinquished claim to the Southold residence; plaintiffs' loss of use of the Amex cards and lost salary and benefits from Anderson, and plaintiffs having received

11

title to the vehicles.  See Bistricer v. Bistricer, 231 N.J. Super. 143, 151-52 (Ch. Div. 1987).

## III.

Defendants also maintain that Article 18.10 of the RBMT is clear, unambiguous, and provides that plaintiffs must indemnify Maimon.  We believe it is premature to determine this issue for two reasons.  First, if the settlement is upheld, Maimon has agreed to withdraw his indemnification request.  Second, the RBMT states that the indemnity clause precludes indemnity for gross negligence or willful misconduct.  That has not been determined.

Vacated and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1126-25